576 A.2d 376

Sherrie SIMMERS and Robert A. Simmers, W/H and Robert S. Simmers a Minor, by His Parents and Natural Guardians, Sherrie Simmers and Robert A. Simmers, W/H

v.

AMERICAN CYANAMID CORPORATION, Tenneco, Inc., Tenneco Resin, Inc., Fellows Medical Manufacturing Company, Inc., Chromalloy American Corporation, Chromalloy Pharmaceutical, Inc., Forrest Pharmaceutical Laboratories, Inc., Heyden Products, Inc., the Children's Hospital of Philadelphia, Radiology Department of the Children's Hospital of Philadelphia, Rovena Spenser, M.D., C.E. Koop M.D. and Joseph Stokes, Jr., M.D. (Two Cases)

Appeal of TENNECO RESINS, INC. (Two Cases)

Robert J. BOYER, Individually and as Executor of the Estate of Marsha F. Boyer, Deceased

v.

CHILDREN'S HOSPITAL OF PHILADELPHIA, Heyden Products, American Cyanamid Corp, Tenneco, Inc., Tenneco Resin, Inc. (Formerly "Tenneco Chemical Co"), Fellows Medical Manufacturing Co., Inc., Chromalloy Pharmaceutical, Inc., Forrest Pharmaceutical Laboratories, Inc., Chromalloy American Corporation and Eugene B. Spitz, M.D. (Two Cases)

Appeal of CHROMALLOY PHARMACEUTICAL, INC. (Two Cases)

Superior Court of Pennsylvania.

Argued Oct. 25, 1989.

Filed June 12, 1990.

466

Norbert F. Bergholtz, Philadelphia, for Tenneco Resins, appellant (at 3433 and 3434) and appellee (at 3565 and 3566).

Joseph B. Mayers, West Conshohocken, for Chromalloy Pharmaceutical, appellant (at 3566).

Thomas F. Reilly, Philadelphia, for Simmers, appellees (at 3433 and 3565).

Michael Coren, Cherry Hill, New Jersey, for Boyer, appellee (at 3434 and 3566).

Before MONTEMURO, POPOVICH and CERCONE, JJ.

POPOVICH, Judge:

In this consolidated appeal, we are presented with a question of first impression in Pennsylvania—whether the forum-related contacts and actions of a predecessor corporation may be attributed to its successor for the purposes of establishing in personam jurisdiction.

Herein, appellants, Tenneco Resins, Inc. and Chromalloy Pharmaceutical, Inc., (hereafter "TRI" and "CPI" respectively) challenge the in personam jurisdiction of the Court

of Common Pleas of Philadelphia.[1] To appreciate fully the complexity of this case, a thorough recitation of the underlying facts is necessary, including a history of the product Thorotrast and its corporate lineage.

Thorotrast is the pharmaceutical brand name for colloidal thorium dioxide which is a radioactive contrast dye medium used to perform diagnostic x-rays. By the late 1940's and continuing to the present date, scientific literature and FDA regulations concerning the use of thorium dioxide products explained the medical risks of using Thorotrast, especially an increased risk of cancer.[2]

The genealogy of the Thorotrast product line and its manufacturers is complex and is the single most important factor in resolution of the question of jurisdiction.[3] The

1. Our review of the lower court's determination has been complicated by the terseness of the court's orders sustaining jurisdiction. The lower court, *without an opinion* espousing the theory/theories serving as the basis of its decisions, found that the Philadelphia Court of Common Pleas could exercise in personam jurisdiction over both appellants. He then entered orders declaring, "the question of In Personam jurisdiction presents a substantial, controlling question of both state and constitutional jurisdictional law, one that is a matter of first impression and which warrants immediate appellate review." We strongly urge the trial court, when faced with future jurisdictional questions, to provide this court with an opinion outlining the factual and legal bases for its decision, rather than simply certifying the issue for appeal. However, rather than remand for explanation of the lower court's decision, we will address the various theories of in personam jurisdiction raised by the plaintiffs-appellees to the extent necessary.

2. See Taft, Editorial: Prium Non Nocere, 51 Radiology 875 (1948); Budin, E. and Gershon–Cohen, J., *The Danger of Cancer from Thorotrast as a Diagnostic Medium*, 75 Am.J. of Roent. 1183 (1956); Council on Pharmacy and Chemistry, Report on Thorotrast, 99 J.Amer.Med. Assoc. 2183; Looney, William B., et al., *Late Follow-up Studies after Internal Deposition of Radioactive Materials*, 160 J.Amer.Med.Assoc. 1 (1956); 25 C.F.R. § 3.36 (1965); Hoffer, P.B., Introduction: Voices from the Past: *A Brief History of Thorotrast*, 1988 Yearbook of Nuclear Medicine, pp. 13–20 (1988).

3. To aid the reader, included in this opinion as Appendix A is a flow chart outlining the relationships between the various companies which are related in any way to Thorotrast. This chart was originally attached to appellees' brief as Exhibit E.

commercial use of Thorotrast as an x-ray contrast dye was pioneered by the Von Heyden Company of Germany in the early 1930's. At the same time, Heyden Chemical Corporation, a New York Corporation, began to distribute Thorotrast in the United States, including the Philadelphia area where the drug was administered at defendant Children's Hospital, among other medical facilities.

In 1953, Heyden sold its antibiotics division to American Cyanamid, including all trademarks, patents, goodwill and business relating to Thorotrast. The November 3, 1953 sales agreement, in part, provided:

[*ARTICLE IV*, A(1)] CYANAMID shall: (1) Duly assume as of the closing provided for herein all obligations of HEYDEN thereafter arising under all licenses, rights, permits, leases, agreements and contracts assigned by HEYDEN to CYANAMID pursuant to this Agreement; provided, however, that with respect to any thereof not identified in the Exhibits attached hereto CYANAMID shall have the option of reassigning the same to HEYDEN, such option to be exercised by notice to HEYDEN within two (2) weeks after an officer of CYANAMID shall have notice thereof.[4]

[*ARTICLE V*, B.] HEYDEN: agrees to indemnify, defend and save CYANAMID and/or their successors and assigns harmless from and against any and all claims of whatsoever nature, including the cost of any litigation thereof, arising out of or in connection with the operation of and conduct by HEYDEN of the business of its Antibiotic Division prior to the closing date hereunder, including, without limitation, claims for infringement of patents, defaults in performance of contract obligations, nuisance claims and claims or liability arising through violation of any law or governmental regulation.

After the sale, Heyden continued in business but no longer made or sold Thorotrast.

**4.** The sales agreement specifically assigned all rights to Thorotrast related patents to American Cyanamid.

In 1954, American Cyanamid sold its Thorotrast product line to Testagar and Company.[5] Appellees allege that as early as 1949, Testagar distributed Heyden's Thorotrast product line. However, the earliest delivery of Thorotrast by Testagar into Pennsylvania documented in the record occurred in 1961.

In 1962, Testagar underwent a statutory consolidation and became part of the Fellows Medical Manufacturing Company. In 1971, Fellows was merged into FMM, Inc., a wholly owned subsidiary of Chromalloy American Corporation. Later the same year, FMM changed its corporate name to Fellows Medical Manufacturing Corporation, Inc., a Delaware Corporation. The Thorotrast product line was passed to each new corporate entity in succession; each, in turn, manufactured the drug and distributed it to the medical profession, including that of Pennsylvania.

Late in 1973, Chromalloy American incorporated Chromalloy Pharmaceuticals, Inc., appellant CPI. In 1974, CPI became the surviving corporation following a statutory consolidation of numerous Chromalloy American subsidiaries, including Fellows Medical Manufacturing Corporation. While it appears that CPI never manufactured or distributed Thorotrast, CPI, through its O'Neil, Jones and Feldmen Division, had filed a New Drug Application for Thorotrast with the Food and Drug Administration. However, in 1977, CPI withdrew its Thorotrast application. Subsequent thereto, portions of CPI were sold to Forest Laboratories, including the O'Neil, Jones and Feldmen Division which then controlled the Thorotrast line.

Meanwhile, in 1957, Heyden changed its name to Heyden Newport Chemical Corporation. In June of 1963, the Tennessee Gas Transmission Company, commonly known as

5. In *Bouley v. American Cyanamid Company, et al.,* Slip Opinion, No. 85–4368–Z (D.Mass. Oct. 21, 1987), available at 1987 WESTLAW 18738, Judge Zobel noted that the Cyanamid–Testagar sales agreement contained a hold-harmless clause under which Testagar agreed to indemnify Cyanamid "against any claim for personal injuries, damages or destruction of property ... arising out of this agreement, the use, handling or inherent characteristics of the materials sold hereunder." *Bouley,* Slip Op. at 10.

Tenneco, Inc., acquired all of the assets and liabilities of Heyden Newport by means of a wholly owned subsidiary known as HDN Corporation, a Delaware corporation, created for such purpose. The "Plan of Reorganization," executed by Heyden Newport, Tenneco and HDN, provided: 1) All of Heyden Newport's assets, properties, business and goodwill were to be transferred to HDN in exchange solely for shares of $5.00 par value common stock of Tenneco owned or to be owned by HDN; and 2) Heyden Newport would then dissolve and distribute the Tenneco shares to stockholders of Heyden. In October of 1963, the parties completed the corporate acquisition of Heyden Newport. Heyden Newport then transferred to HDN all of its assets, properties, business and goodwill including the right to use the name Heyden Newport Chemical Corporation for which HDN executed and delivered to Heyden Newport an "Assumption Agreement" under which HDN agreed to pay, perform and discharge, all debts, obligations, contracts and liabilities of Heyden Newport of any kind, character or description, whether accrued, absolute, contingent or otherwise, and whether or not reflected or reserved against on the financial statements of Heyden Newport. Immediately thereafter, Heyden Newport changed its name to Denport Corporation, underwent voluntary dissolution under Delaware corporate law and distributed the Tennoco shares to its stockholders.

In turn, HDN changed its name to Heyden Newport Chemical Corporation, then to Tenneco Chemicals, Inc., and then again to Tenneco Resins, Inc., appellant TRI. The management of former Heyden Newport was retained as a part of the sales agreement. From the moment of their incorporation, TRI and its predecessors in interest were either qualified to do business as a foreign corporation in Pennsylvania or were carrying on a continuous and systematic part of their business in the Commonwealth until TRI voluntarily surrendered its certificate to do so on June 11, 1984. Thereafter, on August 26, 1985, TRI, pursuant to Delaware law, filed a certificate of dissolution.

The Boyer case is a wrongful death and survival action filed on behalf of the estate of Marsha Boyer and her surviving family. On or about April 19, 1949, Marsha Boyer, then five months old, was administered the drug Thorotrast in Children's Hospital of Philadelphia. She first learned of the presence of Thorotrast in her system in February of 1985. Marsha Boyer died on April 26, 1986, at Broad Street Hospital in Philadelphia from a cancer-related illness which appellees allege was induced by Thorotrast. Throughout her life, Mrs. Boyer was a resident of New Jersey, and, at the time of her death, she resided in Stone Harbor, New Jersey.

The Simmers case is factually similar to the Boyer case. Herein, Sherrie Simmers alleges that as a result of the administration of Thorotrast to her on May 31, 1949, at Children's Hospital of Philadelphia, she currently suffers from numerous serious maladies including, but not limited to, fibrosis, lymphatic obstruction with secondary lymphedema and an increased risk of contracting cancer of the bone marrow, liver, kidneys and spleen. Sherrie Simmers, who is also a life-time resident of New Jersey, learned of her Thorotrast problem in 1986. Neither Thorotrast recipient was ever advised of the inherent problems of Thorotrast by any of the defendants below.

Herein, appellants contend that the forum-related actions contacts and actions of a predecessor corporation may not be attributed to its successor in interest; instead jurisdiction must be based on the forum-related activity of the defendant *itself.* We disagree and hold that the predecessor's activities may be attributed to the successor for jurisdictional purposes.[6]

6. Although appellees raised numerous theories of jurisdiction below, we need only address the inextricably intertwined issues of successor liability and personal jurisdiction. However, for the reader's benefit, we will list the jurisdictional issues as set forth by appellees.

 I. The lower court correctly concluded that Pennsylvania has personal jurisdiction over TRI based upon:

 A. TRI's formal qualification as a foreign corporation in this Commonwealth between August 18, 1963 and June 11, 1984;

Generally, "[j]urisdiction over a nonresident defendant may be based either upon the specific acts of the defendant which gave rise to the cause of action, or upon the defendant's general activity within the forum state." *Skinner v. Flymo, Inc.*, 351 Pa.Super. 234, 239, 505 A.2d 616, 619 (1986) citing, *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 473 n. 15, 105 S.Ct. 2174, 2182 n. 15, 85 L.Ed.2d 528, 541 n. 15 (1985); *Bork v. Mills*, 458 Pa. 228, 329 A.2d 247 (1974); *Rogers v. Rogers*, 295 Pa.Super. 160, 441 A.2d 398 (1982); *Bianco v. Concepts "100", Inc.*, 291 Pa.Super. 458, 436 A.2d 206 (1981).

■ When jurisdiction is based upon a foreign corporation's *general activity* or consent, i.e., when the corporation has "continuous and substantial contacts" with Pennsylvania or has voluntarily registered itself to do business here, the courts of this Commonwealth may exercise jurisdiction over the foreign corporation regardless of whether the cause of action being prosecuted is related to the corporation's activities in Pennsylvania. 42 Pa.C.S.A. § 5301.[7]

> B. TRI's constructive presence in Pennsylvania by virtue of the attribution of its predecessor in interest's (Heyden Newport Chemical Company) contacts with Pennsylvania in general and regarding Thorotrast in particular; and/or
>
> C. TRI's own alleged tortious acts and activities towards Thorotrast victims related to this Commonwealth following its acquisition of Heyden and its specific undertaking to fulfill and perform all of Heyden's obligations and liabilities.
>
> II. The lower Court correctly concluded that Pennsylvania has personal jurisdiction over CPI based upon:
>
> A. CPI's constructive presence in Pennsylvania by virtue of its corporate predecessor's (Testagar and Company) alleged sale and distribution of Thorotrast to Children's hospital;
>
> B. CPI's constructive presence in Pennsylvania by virtue of its predecessor in interest's (Heyden Newport Chemical Company) contacts with Pennsylvania in general and regarding Thorotrast in particular; and/or
>
> C. CPI's own alleged tortious acts and activities toward Thorotrast victims in this Commonwealth subsequent to its acquisition of Heyden's product line.

7. § 5301. *Persons*

(a) **General rule.**—The existence of any of the following relationships between a person and this Commonwealth shall constitute a sufficient basis of jurisdiction to enable the tribunals of this Common-

*Bork v. Mills,* 458 Pa. at 230, 329 A.2d at 249; *Skinner v. Flymo, Inc.,* 351 Pa.Super. at 239, 505 A.2d at 619; *Slota v. Moorings, Ltd.,* 343 Pa.Super. 96, 104–108, 494 A.2d 1, 5–6 (1985); *Whalen v. Walt Disney World Co.,* 274 Pa.Super. 246, 250, 418 A.2d 389, 391 (1980). See also: *Burger King Corp. v. Rudzewicz,* 471 U.S. at 473 n. 15, 105 S.Ct. at 2182 n. 15.

■ Moreover, when a foreign corporation, which was subject to the general personal jurisdiction of Pennsylvania tribunals, subsequently ceases to do continuous and systematic business in Pennsylvania or withdraws its qualifications as a foreign corporation in this Commonwealth, Pennsylvania's jurisdiction over the foreign corporation is not defeated with respect to any act, transaction or omission which occurred during the previous period. 42 Pa.C.S.A. § 5301(b), *supra; Slota v. Moorings, Ltd., supra; Mobay Chemical Corp. v. Air Products, etc.,* 290 Pa.Super. 489, 495, 434 A.2d 1250, 1253 (1981); *Fischman v. Fischman,* 470 F.Supp. 980 (E.D.Pa.1979). Accord, *Burger King Corp. v. Rudzewicz,* 471 U.S. at 473 n. 15, 105 S.Ct. at 2182 n. 15.

■ When jurisdiction is based upon a foreign corporation's specific act or acts related to the forum, the propriety of exercising jurisdiction over a non-resident is predicated upon the following two considerations: 1) Jurisdiction must

wealth to exercise general personal jurisdiction over such person, or his personal representative in the case of an individual, and to enable such tribunals to render personal orders against such person or representative:

\* \* \* \* \* \*

(2) Corporations.—
(i) Incorporation under or qualification as a foreign corporation under the laws of this Commonwealth.
(ii) Consent, to the extent authorized by the consent.
(iii) The carrying on of a continuous and systematic part of its general business within this Commonwealth.

\* \* \* \* \* \*

**(b) Scope of jurisdiction.**—When jurisdiction over a person is based upon this section any cause of action may be asserted against him, whether or not arising from acts enumerated in this section. Discontinuance of the acts enumerated in subsection (a)(2)(i) and (iii) ... shall not affect jurisdiction with respect to any act, transaction or omission during the period such status existed.

be conferred by the Commonwealth's "long-arm" statute, 42 Pa.C.S.A. § 5322 [8] and 2) The exercise of jurisdiction must survive constitutional review under the Due Process

**8.** § 5322. *Bases of personal jurisdiction over persons outside this Commonwealth*

(a) **General rule.**—A tribunal of this Commonwealth may exercise personal jurisdiction over a person (or the personal representative or a deceased individual who would be subject to jurisdiction under this subsection if not deceased) who acts directly or by an agent, as to a cause of action or other matter arising from such person:

(1) Transacting any business in this Commonwealth. Without excluding other acts which may constitute transacting business in this Commonwealth, any of the following shall constitute transacting business for the purposes of this paragraph:

(i) The doing by any person in this Commonwealth of a series of similar acts for the purpose of thereby realizing pecuniary benefit or otherwise accomplishing an object.

(ii) The doing of a single act in this Commonwealth for the purpose of thereby realizing pecuniary benefit or otherwise accomplishing and object with the intention of initiating a series of such acts.

(iii) The shipping of merchandise directly or indirectly into or through this Commonwealth.

(iv) The engaging in any business or profession within this Commonwealth, whether or not such business requires license or approval by any government unit of this Commonwealth.

(v) The ownership, use or possession of any real property situate within this Commonwealth.

(2) Contracting to supply services or things in this Commonwealth.

(3) Causing harm or tortious injury by an act or omission in this Commonwealth.

(4) Causing harm or tortious injury in this Commonwealth by an act or omission outside this Commonwealth.

\* \* \* \* \* \*

(b) **Exercise of full constitutional power over non residents.**—In addition to the provisions of subsection (a) the jurisdiction of the tribunals of this Commonwealth shall extend to all persons who are not within the scope of section 5301 (relating to persons) to the fullest extent allowed under the Constitution of the United States and may be based on the most minimum contact with this Commonwealth allowed under the Constitution of the United States.

(c) **Scope of jurisdiction.**—When jurisdiction over a person is based solely upon this section, only a cause of action or other matter arising from acts enumerated in subsection (a), or from acts forming the basis of jurisdiction under subsection (b), may be asserted against him.

\* \* \* \* \* \*

(e) **Inconvenient forum.**—When a tribunal finds that in the interest of substantial justice the matter should be heard in another forum, the tribunal may stay or dismiss the matter in whole or in part on any conditions that may be just.

Clause of the United States Constitution. *Asahi Metal Industry Co. v. Superior Court*, 480 U.S. 102, 108–109, 107 S.Ct. 1026, 1031–1033, 94 L.Ed.2d 92 (1987); *Burger King Corp. v. Rudzewicz*, 471 U.S. at 470–478, 105 S.Ct. at 2181–2185; *Skinner v. Flymo, Inc.*, 351 Pa.Super. at 239, 505 A.2d at 619; *Hewitt v. Eichelman's Subaru, Inc.*, 341 Pa.Super. 589, 492 A.2d 23 (1985).

The Court, in *Skinner v. Flymo, Inc., supra*, set forth the applicable constitutional guidelines to be employed when determining whether the requirements for specific act jurisdiction have been met as follows:

... Where the forum state seeks to assert specific jurisdiction over an out-of-state defendant, who has not consented to be sued there, the Due Process Clause of the Fourteenth Amendment to the United States Constitution" is satisfied if the defendant has 'purposefully directed' his activities at residents of the forum and the litigation results from alleged injuries that 'arise out of or relate to' those activities." *Burger King Corp. v. Rudzewicz, supra* at 472, 105 S.Ct. at 2182, 85 L.Ed.2d at 540–541 (citation omitted). See: *Helicopteros Nacionales de Columbia, S.A. v. Hall*, 466 U.S. 408, 413–414, 104 S.Ct. 1868, 1872, 80 L.Ed.2d 404, 411 (1984). The critical question in determining whether the defendant has purposefully directed his activities at residents of the forum is not whether it was foreseeable that defendant's activities would have an injurious effect in the forum state, but whether the defendant's conduct and his connection with the forum state were such that he could reasonably anticipate being "haled" into court there. *Burger King Corp. v. Rudzewicz, supra*, 471 U.S. at 474, 105 S.Ct. at 2183, 85 L.Ed.2d at 542; *United Farm Bureau Mutual Insurance Co. v. United States Fidelity and Guaranty Co.*, 501 Pa. 646, 657, 462 A.2d 1300, 1305 (1983), quoting *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 294, 100 S.Ct. 559, 565–566, 62 L.Ed.2d 490, 501 (1980). This question, in turn, must be resolved

by examining the defendant's contacts with the forum state.

The Due Process Clause permits a state to exercise in personam jurisdiction over a nonresident defendant when there exist "certain minimum contacts" between the defendant, the forum state, and the litigation. *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 774, 104 S.Ct. 1473, 1478, 79 L.Ed.2d 790, 797–798 (1984); *Calder v. Jones*, 465 U.S. 783, 788, 104 S.Ct. 1482, 1486, 79 L.Ed.2d 804, 811 (1984); *Helicopteros Nacionales de Columbia, S.A. v. Hall, supra*, 466 U.S. at 413–414, 104 S.Ct. at 1872, 80 L.Ed.2d at 411; *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed.2d 95, 102 (1945); *Kenny v. Alexson Equipment Co.*, 495 Pa. 107, 117–118, 432 A.2d 974, 980 (1981); *Slota v. Moorings, Ltd., supra*, 343 Pa.Super. at 102–103, 494 A.2d at 3. . . .

Random, fortuitous, or attenuated contacts between the forum state will not support an exercise of jurisdiction. [*Burger King Corp. v. Rudzewicz*, 471 U.S.] at 475, 105 S.Ct. at 2183, 85 L.Ed.2d at 542; *Keeton v. Hustler Magazine, Inc., supra*, 465 U.S. at 774, 104 S.Ct. at 1478, 79 L.Ed.2d at 797; *World–Wide Volkswagen Corp. v. Woodson, supra*, 444 U.S. at 299, 100 S.Ct. at 568, 62 L.Ed.2d at 502. Jurisdiction is only proper "where the contacts proximately result from actions by the defendant *himself* which create a 'substantial connection' with the forum State. *Burger King Corp. v. Rudzewicz, supra*, 471 U.S. at 475, 105 S.Ct. at 2184, 85 L.Ed.2d at 542 (emphasis in original). See: *McGee v. International Life Insurance Co.*, 355 U.S. 220, 223, 78 S.Ct. 199, 201, 2 L.Ed.2d 223, 226 (1957). . . .

"Once it has been decided that a defendant purposefully established minimum contacts with the forum State, these contacts may be considered in light of other factors to determine whether the assertion of personal jurisdiction would comport with 'fair play and substantial justice.'" [*Burger King Corp. v. Rudzewicz*, 471 U.S.] at 476, 105 S.Ct. at 2184, 85 L.Ed.2d at 543. Factors to be

considered include " 'the burden on the defendant,' 'the forum State's interest in adjudicating the dispute,' 'the plaintiff's interest in obtaining convenient and effective relief,' 'the interstate judicial system's interest in obtaining the most efficient resolution of controversies,' and the 'shared interest of the several States in furthering fundamental substantive social policies.' " *Id.* at 477, 105 S.Ct. at 2184, 85 L.Ed.2d at 543, quoting *World–Wide Volkswagen Corp. v. Woodson, supra,* 444 U.S. at 292, 100 S.Ct. at 564, 62 L.Ed.2d at 498.

These considerations sometimes serve to establish the reasonableness of jurisdiction upon a lesser showing of minimum contacts than would otherwise be required. On the other hand, where a defendant who purposefully has directed his activities at forum residents seeks to defeat jurisdiction, he must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable. Most such considerations usually may be accomplished through means short of finding jurisdiction unconstitutional. For example, the potential clash of the forum's law with the "fundamental substantive social policies" of another State may be accommodated through application of the forum's choice-of-law rules. Similarly, a defendant claiming substantial inconvenience may seek a change of venue. Nevertheless, minimum requirements inherent in the concept of "fair play and substantial justice" may defeat jurisdiction even if the defendant has purposefully engaged in forum activities. *Burger King Corp. v. Rudzewicz, supra,* 471 U.S. at 477–478, 105 S.Ct. at 2184–2185, 85 L.Ed.2d at 543–544 (citations omitted).

*Skinner v. Flymo, Inc.,* 351 Pa.Super. at 240–244, 505 A.2d at 619–621.

In determining whether the lower court properly exercised jurisdiction over the appellants, we must determine whether it is a violation of our long arm statute and the Due Process Clause of the United States Constitution to attribute the forum contacts of a predecessor corporation to

its successor for jurisdictional purposes. We believe our long arm statute is not violated and, more importantly, due process is not offended by such a judicial action.

Appellees cite a growing line of cases which hold that, under certain circumstances, a court may exercise jurisdiction over a successor corporation based upon the actions of its predecessor. *Duris v. Erato Shipping*, 684 F.2d 352 (6th Cir.1982), *aff'd sub nom., Pallas Shipping Agency, Ltd. v. Duris*, 461 U.S. 529, 103 S.Ct. 1991, 76 L.Ed.2d 120 (1983); *Bowers v. Neti Technologies*, 690 F.Supp. 349 (E.D. Pa.1988); *Goffe v. Blake*, 605 F.Supp. 1151 (D.Del.1985); *United States v. Bliss*, 108 F.R.D. 127 (E.D.Mo.1985); *Cole v. Caterpillar Machinery Corp.*, 562 F.Supp. 179 (M.D.La. 1983); *Fehl v. S.W.C. Corp.*, 433 F.Supp. 939 (D.Del.1977); *Maryland National Bank v. Shaffer Stores Co.*, 240 F.Supp. 777 (D.Md.1965).

In response, appellants argue that this line of cases only applies when a statutory merger is involved, which is *not* the case of either appellant. In support of their argument, appellants cite *Johnston v. Pneumo Corp.*, 652 F.Supp. 1402 (S.D.Miss.1987), *Sullivan v. Fellows Testagar and Company, Inc.*, 518 So.2d 1111 (4th Cir. La.App.1987) and *Tango v. The Cleveland Clinic Foundation*, No. 95606 Slip Op. (C.C.P., Cuyahoga Co., Ohio April 2, 1986). We decline to follow these cases. As we will discuss *infra*, the great weight of persuasive authority permits imputation of a predecessor's actions upon its successor *whenever* forum law would hold the successor liable for its predecessor's actions, even though the new corporate entity is not the result of a statutory merger or consolidation.[9]

9. We note that, generally, the facts of the cases cited by appellee in favor of jurisdiction and relied upon by this court revolve around statutory mergers or consolidation, although the discussion of the issue in each case does not limit itself only to that situation. In *Sullivan v. Fellows Testagar, supra,* the Louisiana Court of Appeals rejected the very argument which we now embrace and found that TRI was not Heyden's successor. We are unpersuaded by the *Sullivan* court's analysis of the facts, and as the discussion *infra* will demonstrate, TRI was by means of a *de facto* merger, the successor to Heyden and liable for Heyden's acts.

Appellants further argue that "various theories of liability add nothing to the jurisdictional inquiry." Quoting *Witt v. Scully*, 539 F.2d 950 (3rd. Cir.1976), appellants argue, "The law which must be applied to the issue [of jurisdiction] ... is not the aggregate of the legal precepts which substantively may impose liability on a defendant. Rather, the applicable legal precepts are jurisdictional ones, wholly statutory in this case. The result turns solely upon whether defendant's conduct brings him within the terms of the Pennsylvania long arm statute." *Witt v. Scully*, 539 F.2d at 951–952.[10] See also *Chromalloy v. Clair Polishing Company, Inc.*, No. 85–6021, Slip Op. (E.D.Pa., May 21, 1986) available at 1986 WESTLAW 5823.

■ However, we disagree and quote with approval Judge Caleb M. Wright who stated, "Certain principles of the substantive law with respect to the assumption by successor corporations of products liability are relevant to this jurisdictional question ... Common to the scope of both jurisdiction and liability is the fairness of making a corporation which enjoys the benefit of business within the state [i.e. assets of its predecessor derived from business within the state] answerable in that jurisdiction for wrongdoing associated with that business." *Fehl v. S.W.C. Corp.*, 433 F.Supp. at 945. Further, Judge Wright stated, "The rationale of the substantive liability [successor liability] cases, in Delaware and elsewhere, is *equally applicable* to the problem of personal jurisdiction." *Fehl v. S.W.C. Corp.*, 433 F.Supp. at 947 (emphasis added). In view of the similarity of concerns with respect to jurisdiction and liability, certain analogies between the law of successor liability are useful to determine whether a predecessor corporation and its successor are one and the same for jurisdictional purposes.[11]

**10.** We note that in *Witt v. Scully, supra,* the Third Circuit was not required to address the issue before us.

**11.** In using *Dawejko v. Jorgenson Steel Co.,* 290 Pa.Super. 15, 434 A.2d 106 (1981), we simply apply by analogy the law of successor liability to that of personal jurisdiction in order to make the preliminary determination of whether, based on the facts as they have been

 The general rule governing successor liability in Pennsylvania is set forth in *Dawejko v. Jorgenson Steel Co.*, 290 Pa.Super. 15, 434 A.2d 106 (1981). Generally, when a company sells or transfers all of its assets to a successor, the successor does *not* acquire the liabilities of the transferor merely because of its succession to the transferor's assets. *Dawejko v. Jorgenson Steel Co.*, 290 Pa.Super. at 18, 434 A.2d at 107. See also *Knapp v. North American Rockwell*, 506 F.2d 361 (3rd Cir.1974), *cert. denied* 421 U.S. 965, 95 S.Ct. 1955, 44 L.Ed.2d 452 (1975). However, the general rule does not apply and liability attaches to the successor when one of the following is shown:

1) The purchaser expressly or impliedly agrees to assume such obligation;

2) The transaction amounts to a consolidation or merger;

3) The purchasing corporation is merely a continuation of the selling corporation;

4) The transaction is fraudulently entered into to escape liability;

5) The transfer was not made for adequate consideration and provisions were not made for the creditors of the transferor.

6) The successor undertakes to conduct the same manufacturing operation of the transferor's product lines in essentially an unchanged manner. The successor is then strictly liable for injuries caused by defects in the product line, even if previously manufactured and distributed by the transferor.

*Dawejko v. Jorgenson Steel Co.*, 290 Pa.Super. at 18, 23, 434 A.2d at 107, 110. See also *Philadelphia Electric Company v. Hercules, Inc.*, 762 F.2d 303 (3rd Cir.1985) (applying Pennsylvania successor liability law).

 Instantly, the plaintiffs have demonstrated that TRI by means of a *de facto* merger had become the corporate embodiment of Heyden. As previously described, Tenneco acquired all of the assets and liabilities of Heyden Newport

developed at this early stage of litigation, the successor corporations should stand in the shoes of their predecessor/s.

in 1963. In exchange for Tenneco stock owned by HDN, Heyden transferred all its assets and liabilities to HDN Corporation, a wholly-owned subsidiary of Tenneco created for the purpose of acquiring Heyden Newport. Heyden Newport then changed its name to Denport Corporation and dissolved, immediately distributing its Tenneco shares to the former Heyden shareholders. In turn, HDN changed its name to Heyden Newport Chemical Corporation, then to Tenneco Chemicals and eventually to TRI. The fact that a *de facto* merger occurred is particularly evident when we consider that after the transaction between Tenneco and Heyden Newport, the new corporation transacted business under its former name for a period of time, all of Heyden Newport's corporate officers were retained by the new entity and the sales agreement provided Heyden Newport had to dissolve itself and distribute its Tenneco stock. See *Elmer v. Tenneco Resins, Inc.,* 698 F.Supp. 535 (D.Del. 1988) ("the Court finds that there is a question whether HDN impliedly assumed any Thorotrast liability of Heyden ... It could reasonable be inferred ..., that HDN agreed to assume any and all liabilities of Heyden ..."); *Gee v. Tenneco, Inc.,* 615 F.2d 857, 863 (9th Cir.1980) (Tenneco documents are reasonably susceptible to conflicting interpretations and whether HDN assumed Thorotrast liabilities of Heyden is a question of fact).

In *Gee v. Tenneco, Inc.,* 615 F.2d at 864, the Ninth Circuit, citing dicta from the California case of *Ray v. Alad Corp.,* 19 Cal.3d 22, 560 P.2d 3, 136 Cal.Rptr. 574 (1977), stated "it would appear that the [Heyden–Tenneco] transaction falls within the *de facto* merger doctrine." However, the Court, bound by its standard of review, refused to overturn summary judgment on this issue because it was not absolutely certain that the dicta in *Ray v. Alad Corp., supra,* concerning the *de facto* merger doctrine was the law of California. We need not hypothesize about Pennsylvania law regarding *de facto* merger; successor liability is imposed when the consideration for the purchase of assets consists wholly of shares of the purchaser's stock which are

484

then promptly distributed to the seller's shareholders in conjunction with seller's liquidation. *Shannon v. Samuel Landston Company*, 379 F.Supp. 797, 801 (W.D.Mich.1974). See also *Philadelphia Electric Company v. Hercules, Inc.*, 762 F.2d 303 (3rd Cir.1985); *Martin v. Johns–Manville Corp.*, 322 Pa.Super. 348, 371, 469 A.2d 655, 667 (1983).[12] This is exactly what happened *sub judice.*

Similarly, we find that CPI is subject to the jurisdiction of Pennsylvania courts. In 1954, Testagar purchased the Thorotrast product line from American Cyanamid and manufactured and distributed Thorotrast in Pennsylvania in an essentially unchanged manner from that of Heyden. When Testagar purchased the Thorotrast product line from American Cyanamid, it expressly agreed to assume Thorotrast related liabilities. CPI is, through a series of statutory consolidations and mergers, the current corporate embodiment of Testagar. The foregoing analysis demonstrates that Testagar was liable as the successor in interest to Heyden and American Cyanamid for Thorotrast related liabilities pursuant to the "product line exception". *Dawejko v. Jorgenson Steel Co., supra.* It then follows that CPI, as the corporate embodiment of Testagar by means of statutory mergers and consolidations, is responsible for Testagar liabilities resulting from its continuation of Heyden's Thorotrast product line. Cf., *Husak v. Berkel Inc.*, 234 Pa.Super. 452, 341 A.2d 174 (1975).

Having determined that both TRI and CPI are essentially the corporate embodiments of their predecessors (ultimately, Heyden) and, for the purposes of jurisdiction, liable for their predecessors' acts, we turn to the question of whether due process is offended by subjecting a successor corporation to personal jurisdiction based on the forum related

12. In *Martin v. Johns–Manville, supra,* we stated, "We believe, however, that in some circumstances a successor should be held accountable for the recklessness of its predecessor. This will be so when the goals that underlie the imposition of punitive damages—punishment and deterence—will be advanced. In this regard, we may draw from the various formulations of the rule permitting the imposition of successor liability when the successor is a mere "continuation" of its predecessor." Citing *Shannon v. Samuel Langston Co., supra.*

activity of its predecessor.[13] As the following will explain, due process is not offended by subjecting TRI and CPI to personal jurisdiction in the Commonwealth of Pennsylvania.

In *Duris v. Erato Shipping*, 684 F.2d 352 (6th Cir.1982), *aff'd sub nom., Pallas Shipping Agency, Ltd. v. Duris*, 461 U.S. 529, 103 S.Ct. 1991, 76 L.Ed.2d 120 (1983),[14] the Sixth Circuit found that, although the surviving corporation to a merger had never transacted business in Ohio, its constituent corporation had. It further found that under Ohio law, the surviving corporation was liable for all claims against the constituent corporation. *Id.*, at 356. Therefore, the Court concluded that the plaintiff could gain personal jurisdiction over the surviving corporation merely by establishing Ohio contacts sufficient to exercise jurisdiction over the constituent corporation. To quote the *Duris* court, "Any other ruling would allow corporations to immunize themselves by formalistically changing their titles." *Id.*, at 356.

In *Goffe v. Blake*, 605 F.Supp. 1151 (D.Del, 1985), the district court held that the action and conduct of a constituent corporation could be attributed to its successor following a merger for the purpose of determining the successor's amenability to personal jurisdiction for the liability of its predecessor. After so ruling, the court applied the District of Columbia long arm statute and the Due Process Clause to the predecessor corporation. Finding, personal jurisdiction was properly over the predecessor, it logically followed that the successor was amenable to personal jurisdiction in the same location. *Id.*, at 1154–1156 (analysis and holding). *Cf., Bowers v. Neti Technologies*, 690 F.Supp. 349, 361 (E.D.Pa.1988) (If NHF is not subject to personal jurisdiction

13. Pennsylvania's jurisdictional statutes are co-extensive with the Due Process Clause. *Gulentz v. Fosdick*, 320 Pa.Super. 38, 466 A.2d 1049 (1983), appeal after remand 355 Pa.Super. 302, 513 A.2d 440, appeal denied 515 Pa. 580, 583, 527 A.2d 541, 543; 42 Pa.C.S.A. § 5308 ("The tribunals of this Commonwealth may exercise jurisdiction under this subchapter only where the contact with this Commonwealth is sufficient under the Constitution of the United States."); 42 Pa.C.S.A. § 5322(b).

14. We note that the issue now before us which was decided by the 6th Circuit Court of Appeals was not presented to the Supreme Court of the United States.

for its liabilities as successor corporation, corporations will be encouraged to immunize themselves by fleeing the jurisdiction and formalistically changing their names—a result clearly not supported by the Pennsylvania jurisdictional statute, citing 42 Pa.C.S.A. § 5301(b)); *United States v. Bliss*, 108 F.R.D. 127, (E.D.Mo.1985) (As foreign successor to corporation which acquired Missouri corporation and its liabilities, nonresident corporation was subject to jurisdiction under Missouri long arm statute).

Similarly, in *Cole v. Caterpillar Machinery Corp.*, 562 F.Supp. 179 (M.D.La.1983), the court held that where a successor corporation to a merger had no contacts with the forum, it could still be subjected to in personam jurisdiction without offending due process requirements since plaintiff's claim arose against its predecessor and that the corporation once had significant contacts with the forum. The court specifically noted that as a result of the merger, the successor had assumed both the liabilities and the assets of its predecessor. Further, the court stated, "Since Americas [successor] could have availed itself of the benefits of the forum in order to sue for monies owed its corporate predecessor, it seems only fair that Americas, deriving benefits from the forum should also be expected to answer for liabilities incurred by the alleged negligent actions of its predecessor." *Id.*, at 180–181.

As previously noted, Judge Wright in *Fehl v. S.W.C. Corp.*, *supra,* held that under Delaware law, personal jurisdiction may be assumed over a successor corporation on the basis of the acts of its predecessor in cases where a merger or continuation has preserved the corporate entity. *Fehl*, 433 F.Supp. at 947. Therein, the issue presented was whether a successor corporation could be subject to personal jurisdiction on the basis of actions taken by a predecessor corporation where the predecessor had sold the successor all the assets relating to a specific line of business rather than merged into the successor. Judge Wright determined that the plaintiff had not met its burden of demonstrating that the successor-defendant had absorbed its predecessor

through merger or reorganization, and, consequently, the successor liability theory of jurisdiction failed. However, we reiterate that in Pennsylvania, successor liability has been expanded to include liability based on continuation of a predecessor's product line. *Dawejko v. Jorgenson Steel Co., supra.* Thus, it is the opinion of this court that if current Pennsylvania successor liability law was applied to the facts presented to the *Fehl* court, the result would mirror the result we reach today with respect to appellant CPI. With respect to appellant TRI, the decision in *Fehl v. S.W.C. Corp., supra,* as it was decided thirteen years ago, continues to support our decision today.

Likewise, in *Maryland National Bank v. Shaffer Stores Co.,* 240 F.Supp. 777 (D.Md.1965), the district court held that personal jurisdiction could be asserted pursuant to the Maryland long arm statute over the surviving corporation to a merger without violating the Due Process Clause. In so ruling, the court specifically *rejected* the defendant's argument that since its sole contact with Maryland was as the successor, by several corporate mergers, to an obligor to a contract entered into in Maryland, it would be a violation of due process to subject it to suit in Maryland. *Id.,* at 779.

In addition, the Court of Appeals of the State of Michigan, in *Wiles v. B.E. Wallace Products Corp.,* 25 Mich.App. 300, 181 N.W.2d 323 (1970), held that a foreign corporation, as the alleged successor in interest to the sole proprietorship which had manufactured and sold the gantry that collapsed with resultant injury to plaintiff, could be subjected to jurisdiction under long arm statute based on its predecessors contact with the state if plaintiff could prove his allegations of fact. Thus, the question of jurisdiction over the foreign successor corporation was erroneously disposed of summarily by the trial court.[15]

---

**15.** The Michigan decision is especially significant as our own general jurisdiction statute, 42 Pa.C.S.A. § 5301, was patterned after Michigan statutes, 27A.701, .711, .721 and .731. 42 Pa.C.S.A. § 5301, Historical note.

However, we emphasize that the acts of a prede-cessor will not be attributed to its successor when the transaction between the two amounts only to a sale of assets for adequate consideration. *Harris v. Newmand Machine Company, Inc.*, 641 F.Supp. 146 (S.D.Miss.1986) (Due Process Clause did not permit subjecting foreign corporation which merged with manufacturer to jurisdiction in Mississippi where corporation's only contact with Mississippi was purchase of the assets of predecessor which had sold equipment in forum, and after that time, had no contacts with the forum). See also *Wines v. Lake Havasu Boat Manufacturing, Inc.*, 846 F.2d 40 (8th Cir.1988) (corporate defendant's predecessor's forum contacts would not be attributed to defendant for purposes of jurisdiction, where defendant's predecessor purchased assets from an individual but did not assume any liabilities). This is consistent with our holding today since under Pennsylvania law the general rule of successor liability remains that when a company sells its assets to a successor, the successor does not acquire the liabilities of the transferor merely because of its succession to the transferor's assets. *Knapp v. North American Rocckwell, supra; Philadelphia Electric v. Hercules, supra; Dawejko v. Jorgenson Steel Co., supra.* Accordingly, if a successor does not assume either voluntarily or by operation of law the liabilities of its predecessor, then the acts of its predecessor may not be attributed to the successor when answering the question of jurisdiction.

Instantly, it is without question that Heyden could have been subjected to general jurisdiction pursuant to 42 Pa.C.S.A. § 5301(a)(2)(iii) and (b), *supra*, for causes of action relating to its Thorotrast product line. Moreover, the same facts could have served as the basis for specific act jurisdiction pursuant to Pennsylvania's long arm statute, 42 Pa.C.S.A. § 5322(a)(1), (a)(3), (b). At the time when Mrs. Boyer and Mrs. Simmer were administered Thorotrast at Children's Hospital of Philadelphia, Heyden was the *sole* manufacturer of Thorotrast in the United States, and Heyden

distributed Thorotrast in the Commonwealth of Pennsylvania. Certainly, the Due Process Clause is satisfied as Heyden "purposefully directed" its product Thorotrast at Pennsylvania residents, and the litigation arises directly from the manufacturer and distribution of the drug. *Burger King Corp. v. Rudzewicz*, 471 U.S. at 473–474, 105 S.Ct. at 2182–2183; *Skinner v. Flymo*, 351 Pa.Super. at 242–244, 505 A.2d at 621. Since sufficient "minimum contacts" exist between Heyden and Pennsylvania and those contacts relate directly to the causes of action before us, jurisdiction over TRI was properly exercised by the court below. Likewise, CPI, as successor to Testagar and Heyden, is subject to the personal jurisdiction of Pennsylvania courts, since sufficient "minimum contacts" exist between the subject matter of the litigation, Heyden and the Commonwealth of Pennsylvania.[16] For a similar result see *Bouley v. American Cyanamid Company, supra* (personal jurisdiction over TRI retained).

In holding that the forum-related contacts of a predecessor corporation may be attributed to its successor for jurisdictional purposes when the successor has assumed its predecessor's liabilities, we recognize the realities of modern corporate law and the ever increasing frequency of corporate reorganizations. Plaintiffs must be permitted to establish jurisdiction over a successor corporation based upon its predecessor's contacts with the forum. Otherwise, a corporation which voluntarily or by the operation of law assumes its predecessor's liabilities may be able to avoid the jurisdiction of the very forum where the liability accrued simply because it never did business within that forum. This result would be absurd especially when the assets

16. This is not to say that TRI and CPI ultimately will be liable for appellees' injuries. If Heyden is found liable, then it must be determined who assumed this liability. Among numerous other substantive issues, there are disputes as to the provisions of the Heyden–Tenneco and Heyden–American Cyanamid contracts concerning assumption of liability for Thorotrast related injuries when the administration of the drug occurred before the sale of Thorotrast to American Cyanamid but the personal injury suit was not filed until well after the sale.

purchased by the successor, at least in part, were derived from the forum and the successor no doubt had knowledge of its predecessor's presence within the forum. Moreover, our holding today recognizes, from a public policy perspective, the nature of products liability actions and their relation to corporate reorganizations. Again, we quote Judge Wright:

The fact that the predecessor corporation may continue to possess substantial assets may afford protection to the ordinary contract creditors, whose claims are ascertainable at the time of the transfer. It does not necessarily protect products liability plaintiffs, since their claims are contingent and may not arise until long after the corporation is dissolved and its remaining assets distributed ... See, Note, "Assumption of Products Liability in Corporate Acquisitions", 55 Boston Law Review 86.

*Fehl v. S.W.C. Corp*, 433 F.Supp. at 946, n. 10.

When a successor corporation assumes the liabilities of its corporate predecessors, the successor in effect consents to be held liable in the same locations where its predecessor would have been exposed, i.e. consents to the same jurisdictional qualities of its predecessor. The provisions of the Due Process Clause are not violated by imputing the predecessor's actions and forum contacts upon its successor. As stated in *Burger King v. Rudzewicz*, 471 U.S. at 474, 105 S.Ct. at 2183, the critical question is whether "the defendant's conduct and his connection with the forum state are such that he could reasonably anticipate being haled into court there." No doubt in today's sophisticated world of corporate takeovers, a corporation, which assumes another's liabilities or purchases another's product line, seriously considers the possible extent of any liabilities and where those liabilities may exist. We are convinced that the traditional notions of "fair play and substantial justice" central to the assertion of jurisdiction are in fact furthered by today's decision.

In sum, we reiterate that successor corporations must be prepared to answer for the acts of their predecessors. A

successor which through a merger, consolidation or *de facto* merger is the corporate embodiment of its predecessor must not be permitted to immunize itself in a specific jurisdiction from the liabilities of its predecessor. Likewise, a successor company which purchases and manufactures a predecessor's product line cannot avoid the jurisdiction of those forums wherein the product was previously manufactured and distributed. In Pennsylvania, it is now the law that when the successor is subject to the liabilities of its predecessor, the acts of a predecessor corporation may be attributed to its successor for the purposes of determining whether jurisdiction is proper.

Orders affirmed. Cases remanded for further proceedings. Jurisdiction is relinquished.