JEFFREY v RAPID AMERICAN CORPORATION

Docket Nos. 96953-97009. Argued December 7, 1994 (Calendar No. 4).
Decided March 15, 1995.

Hector J. Jeffrey and others brought fifty-seven multiple party,
asbestos-related personal injury actions in various circuit courts
against Rapid American Corporation. In each case, the court
denied the defendant's motion challenging personal jurisdiction
under MCR 2.116(C)(1). The Court of Appeals, FITZGERALD, P.J.,
and SHEPHERD and JANSEN, JJ., affirmed in an opinion per
curiam (Docket Nos. 151835-151840, 151850-151854, 152454,
152931, 152984, 152985, 152988, 152990, 152994, 153670,
153671, 155041-155052, 155793-155798, 156121, 156870-156882,
157109-157111, 157285, 157291). The defendant appeals.

In an opinion by Justice CAVANAGH, joined by Chief Justice
BRICKLEY, and Justices LEVIN, BOYLE, RILEY, and MALLETT, the
Supreme Court *held:*

Jurisdictional contacts of a nonresident predecessor corpora-
tion with the State of Michigan can be imputed to a nonresi-
dent successor corporation where the successor expressly as-
sumes all liabilities of the predecessor and where exercise of
personal jurisdiction over that defendant is reasonable. In this
case, the plaintiff has alleged sufficient jurisdictional facts,
which, if proven,' will establish limited personal jurisdiction
over this defendant pursuant to the Michigan long-arm statute,
MCL 600.715; MSA 27A.715.

1. The Due Process Clause of the Fourteenth Amendment
limits the jurisdiction of state courts to enter judgments affect-
ing the rights or interests of nonresident defendants. A valid
judgment affecting a nonresident defendant's rights or interests
only may be entered by a court having personal jurisdiction
over the defendant. A court may acquire personal jurisdiction
over a nonresident defendant when the nonresident's relation-

REFERENCES

Am Jur 2d, Foreign Corporations §§ 325, 474.

Comment note—"Minimum contacts" requirement of Fourteenth
Amendment's due process clause (Rule of *International Shoe Co.
v Washington*) for state court's assertion of jurisdiction over
nonresident defendant. 62 L Ed 2d 853.

ship with the forum is such that it is fair to require the defendant to appear before the court, such as where the defendant possesses "minimum contacts" with the forum.

2. Whether sufficient minimum contacts exist between a defendant and Michigan to support exercising limited personal jurisdiction is determined by examining whether: the defendant has purposely availed itself of the privilege of conducting activities in Michigan, thus invoking the benefits and protections of this state's laws; the cause of action arose as a result of the defendant's activities in the state; and the defendant's activities are substantially connected with Michigan to make the exercise of jurisdiction over the defendant reasonable. Jurisdiction may be properly exercised over a corporate defendant when it reaches beyond its own state and purposely avails itself of the privilege of exploiting forum-based business opportunities. The acts of a predecessor corporation may be imputed to a successor corporation for jurisdictional purposes under the proper circumstances, including express assumption by the successor of the predecessor's liabilities. In this case, under MCL 600.715; MSA 27A.715, once it is determined that the predecessor's contacts may be imputed to the successor corporation, it is beyond question that the successor is subject to Michigan's long-arm statute because the cause of action, sounding in tort, is directly related to the predecessor's contacts with Michigan.

3. The actions of a constituent corporation may be attributed to a surviving corporation following a merger for purposes of determining the surviving corporation's amenability to personal jurisdiction for liabilities allegedly incurred by the constituent corporation. While this rule typically is applied to corporations that are the present corporate embodiment of a predecessor, it is equally applicable where a corporation expressly assumes the liabilities of its predecessors. In this case, the defendant's express assumption of liability was a deliberate undertaking on its behalf that amounted to a purposeful availment of Michigan opportunities. Once it voluntarily had assumed the assets and liabilities, it could have availed itself of Michigan law to enforce those rights, at least insofar as its claims arose out of the predecessor's dealings in Michigan. Thus, it could be brought into a Michigan court. Having voluntarily assumed the assets and liabilities of its predecessors, the defendant may not use due process as a shield to avoid its interstate obligations.

4. Exercise of jurisdiction over the defendant is reasonable. The merger agreements between the defendant and its prede-

cessors were deliberative. When viewed from the defendant's perspective, there is nothing fortuitous about its assumption of liability. It is not being brought before Michigan courts on the basis of the unilateral acts of unrelated third parties, but, rather, because of its express assumption of the assets and liabilities of its predecessors and not solely because its predecessors operated in Michigan. Furthermore the burden of forcing the defendant, a corporation whose holdings appear to be national in scope, to litigate in this forum is slight, and the most convenient forum for the plaintiff is Michigan. In addition, because the alleged acts of negligence occurred in Michigan, it is probable that most of the witnesses and evidence will also be found in Michigan. Michigan has an overriding interest in making sure that a corporation that has voluntarily assumed the liabilities of its predecessors cannot avoid the jurisdiction of the very forum in which the alleged liabilities accrued. Finally, when a defendant has purposely directed its activities at forum residents, it must present a compelling case that the presence of some other considerations renders jurisdiction unreasonable. In this case, the defendant has presented no such considerations.

Affirmed.

Justice WEAVER took no part in the decision of this case.

200 Mich App 150; 503 NW2d 720 (1993) affirmed.

COURTS — PERSONAL JURISDICTION — LONG-ARM STATUTE — FOREIGN CORPORATIONS.

Jurisdictional contacts of a nonresident predecessor corporation with the State of Michigan can be imputed to a nonresident successor corporation where the successor expressly assumes all liabilities of the predecessor and where exercise of personal jurisdiction over that defendant is reasonable (MCL 600.715; MSA 27A.715).

*Goldberg, Persky, Jennings & White, P.C.* (by *Joel I. Persky, James J. Bedortha, James M. Hession,* and *Terrence M. O'Brien*), and *Michael B. Serling,* and *Goldberg, Persky, Jennings & White, P.C.* (by *Tybe A. Brett*), for the plaintiff.

*Kazul & Associates, P.C.* (by *John J. Schutza*), and *Rubin, Baum, Levin, Constant & Friedman* (by

*Paul H. Aloe* and *Susan Rotmistrovsky)* for the defendant.

CAVANAGH, J.

I

The issue in this case[1] is whether a Michigan court can exercise personal jurisdiction over a nonresident corporation because of the imputation of a predecessor corporation's contacts with the state. We hold that it can when the exercise of jurisdiction is both fair and reasonable. The exercise of limited personal jurisdiction over this defendant is properly exercised pursuant to MCL 600.715; MSA 27A.715 and comports with traditional notions of fair play and substantial justice.

II

The facts are largely undisputed although somewhat complex. The plaintiff claims he suffers from personal injuries caused by exposure to asbestos contained in products sold in Michigan by The Philip Carey Manufacturing Company (old Carey). Old Carey maintained offices in Detroit and Saginaw through which asbestos-containing products were distributed in Michigan.

Through a series of mergers, defendant Rapid American Corporation became a corporate successor to old Carey. Old Carey was incorporated in Ohio in 1888. On June 1, 1967, old Carey merged with the Glen Alden Company, which was at that time a wholly owned subsidiary of Rapid American Corporation. The merger agreement provided that

[1] This case represents the consolidation of fifty-seven multiple party, asbestos-related personal injury actions from around the state. In each, the respective circuit court denied defendant's motion challenging personal jurisdiction pursuant to MCR 2.116(C)(1). Throughout this opinion we refer to this case in the singular for simplicity. All such references apply equally to each of these consolidated cases.

the surviving corporation (Glen Alden Corporation)

> shall succeed to and shall possess and enjoy all the rights, privileges, powers, franchises, immunities and interest, both of a public and private nature, and be subject to *all restrictions, debts, liabilities and duties* of each of the Constituent Corporations [i.e., The Philip Carey Manufacturing Company and Glen Alden Company]. . . . [A]ll debts, liabilities, restrictions, and duties of either of the Constituent Corporations shall thenceforth attach to the Surviving Corporation and *may be enforced against it to the same extent as if they had been incurred or contracted by it.* [Emphasis added.]

On the same day of the merger between old Carey and Glen Alden, all assets and liabilities of old Carey were assigned by Glen Alden to its own independent subsidiary, The Philip Carey Manufacturing Company (new Carey).

On April 17, 1972, Glen Alden sold new Carey[2] to the Celotex Corporation. Celotex assumed all of new Carey's assets and liabilities, including those remaining from old Carey. Shortly after shedding new Carey, Glen Alden merged into its parent, Rapid American, to form a Delaware corporation called Rapid American Corporation. The merger agreement, dated November 3, 1972, provides:

> [B]ut all rights of creditors and all liens upon any property of any of the Constituent Corporations [Glen Alden and Rapid] shall be preserved unimpaired, and *all debts, liabilities and duties of the Constituent Corporations shall thenceforth attach to the Surviving Corporation [Rapid] and may*

---

[2] In 1970, new Carey merged with Briggs Manufacturing Company, a Michigan corporation, and changed its name to Panacon Corporation. Glen Alden owned the majority of Panacon stock, and this is what was eventually sold to Celotex Corporation.

*be enforced against it to the same extent as if said debts, liabilities and duties had been incurred or contracted by it.* [Emphasis added.]

Celotex was eventually named as a defendant in numerous asbestos-related personal injury actions because of its own alleged liability as well as that of old Carey and the various incarnations of new Carey. Celotex filed bankruptcy in 1990. Shortly thereafter, and apparently as a response to the Celotex bankruptcy, Rapid American was added as a defendant in these actions filed against Celotex.

Rapid American filed a motion for summary disposition pursuant to MCR 2.116(C)(1), arguing that Michigan could not exercise limited personal jurisdiction over it solely because it is the corporate successor to old Carey.[3] The plaintiff countered that jurisdiction arises because old Carey's contacts are imputed to the defendant because Rapid American assumed old Carey's liabilities when it merged with Glen Alden. The trial court denied the motion, holding that Rapid American is subject to personal jurisdiction in Michigan.

The Court of Appeals affirmed the decision of the trial court:

By merging with Glen Alden and assuming the liabilities of that corporation, and agreeing to the enforcement measures as stated in the agreement, Rapid, a sophisticated national corporation, clearly and unambiguously assumed the liabilities of Old Carey that remained in Glen Alden. Glen Alden could not have failed to contemplate the assumption of liabilities from any damages caused by Old

---

[3] Although not made clear by either party, Rapid American Corporation appears to be a holding company for a number of other corporations. Regardless of what other contacts Rapid American may have with Michigan through any of its other subsidiary corporations, it seems clear that Rapid American has never done business in Michigan as Rapid American.

Carey's manufacture and distribution in Michigan of products containing asbestos. Rapid expressly assumed the liabilities of Glen Alden and the above-referenced means of enforcement; therefore, it cannot be said that Rapid lacked warning that it would be subject to suit in forums in which Old Carey, the predecessor to a former Glen Alden subsidiary, did business and would have been liable to suit.

* * *

However, in these cases, Rapid's express and unequivocal assumption of Glen Alden's liabilities, which included the remaining liabilities of Old Carey, give it sufficient contacts with Michigan to make it amenable to suit in this forum. [200 Mich App 150, 154-155; 503 NW2d 720 (1993).]

### III

The appellate standard of review when examining jurisdictional rulings is de novo. *Williams v Bowman Livestock Equipment Co,* 927 F2d 1128, 1130 (CA 10, 1991). The plaintiff bears the burden of establishing jurisdiction over the defendant, *Modzy v Lopez,* 197 Mich App 356, 359; 494 NW2d 866 (1992), but need only make a prima facie showing of jurisdiction to defeat a motion for summary disposition. *Bowman Livestock* at 1131. The affidavits, together with any other documentary evidence submitted by the parties, must be considered by the court. MCR 2.116(G)(5). All factual disputes for the purpose of deciding the motion are resolved in the plaintiff's (nonmovant's) favor. See *Wiles v B E Wallace Products Corp,* 25 Mich App 300, 303-305; 181 NW2d 323 (1970); *Bowman Livestock* at 1130.

When analyzing whether the exercise of limited personal jurisdiction over a given defendant is proper, a two-step inquiry is generally applied.

First, the exercise of limited personal jurisdiction must be consistent with the requirements of due process. *Witbeck v Bill Cody's Ranch Inn,* 428 Mich 659, 665-666; 411 NW2d 439 (1987); *Modzy* at 358. Second, defendant must come within the terms of MCL 600.715; MSA 27A.715. *Witbeck* at 666. However, in this case, the Court must make an additional inquiry: Can the jurisdictional contacts of a corporate predecessor be imputed to its successor in order to satisfy the first two inquiries? Despite the fact that this additional inquiry is the primary focus of this opinion, we begin with the first inquiry in order to create the framework within which the primary discussion may occur.

A

The Due Process Clause of the Fourteenth Amendment limits the jurisdiction of state courts to enter judgments affecting the rights or interests of nonresident defendants. *Kulko v California Superior Court,* 436 US 84, 91; 98 S Ct 1690; 56 L Ed 2d 132 (1978). As a result, a valid judgment affecting a nonresident's rights or interests may only be entered by a court having personal jurisdiction over that defendant. *Int'l Shoe Co v Washington,* 326 US 310, 319; 66 S Ct 154; 90 L Ed 95 (1945). A court may acquire personal jurisdiction over a nonresident when the nonresident defendant's relationship with the forum is such that it is fair to require the defendant to appear before the court. *Id.*

It is fair to require a defendant to appear before the court when the defendant possesses "minimum contacts" with the forum. A defendant must "have certain minimum contacts with [the forum] such that maintenance of the suit does not offend 'traditional notions of fair play and substantial

justice.' " *Int'l Shoe Co* at 316. Whether sufficient minimum contacts exist between a defendant and Michigan to support exercising limited personal jurisdiction is determined by applying a three-pronged test:

> First, the defendant must have purposefully availed himself of the privilege of conducting activities in Michigan, thus invoking the benefits and protections of this state's laws. Second, the cause of action must arise from the defendant's activities in the state. Third, the defendant's activities must be substantially connected with Michigan to make the exercise of jurisdiction over the defendant reasonable. [*Modzy* at 359.]

The requirement of minimum contacts serves two purposes: (1) it protects a defendant from litigating in distant or inconvenient forums, and (2) it ensures that a state does not extend its judicial power beyond the limits imposed on all states by our federal system of government. *World-Wide Volkswagen v Woodson,* 444 US 286, 292; 100 S Ct 559; 62 L Ed 2d 490 (1980). Of the two, however, the overriding purpose of due process is to protect the individual liberty interests encompassed within its scope as opposed to furthering concepts of federalism. *Burger King v Rudzewicz,* 471 US 462, 472, n 13; 105 S Ct 2174; 85 L Ed 2d 528 (1985). Nevertheless, both purposes work in tandem to give our legal system a degree of predictability that provides potential defendants with the opportunity to structure their affairs so as to provide some assurance regarding where they may be haled into court.

The primary focus of personal jurisdiction is on "reasonableness" and "fairness." Each case, therefore, must turn on its own merits.

> [T]he criteria by which we mark the boundary
> line between those activities which justify the
> subjection of a corporation to suit, and those which
> do not, cannot be simply mechanical or quanti-
> tative. . . . Whether due process is satisfied must
> depend rather upon the quality and nature of the
> activity in relation to the fair and orderly adminis-
> tration of the laws which it was the purpose of the
> due process clause to insure. [*Int'l Shoe Co* at 319.]

When undertaking this case-by-case analysis, it
is the relationship of the defendant, the forum,
and the litigation that is significant. *Shaffer v
Heitner,* 433 US 186, 204; 97 S Ct 2569; 53 L Ed 2d
683 (1977). The defendant's own conduct and con-
nection with the forum must be examined in order
to determine whether the defendant should rea-
sonably anticipate being haled into court there.
*World-Wide Volkswagen* at 297. The unilateral
acts of unrelated third parties may not be used to
justify the imposition of personal jurisdiction. *Han-
son v Denckla,* 357 US 235, 253; 78 S Ct 1228; 2 L
Ed 2d 1283 (1958).

Jurisdiction may be properly exercised over a
corporate defendant when it reaches beyond its
own state and purposely avails itself of the privi-
lege of exploiting forum-based business opportuni-
ties. This requirement of purposeful availment
ensures that a corporation will not be subjected to
jurisdiction on the basis of random, fortuitous, or
attenuated contacts. *Keeton v Hustler Magazine,
Inc,* 465 US 770, 774; 104 S Ct 1473; 79 L Ed 2d
790 (1984). In examining what it means to pur-
posely avail oneself of Michigan opportunities this
Court held:

> A "purposeful availment" is something akin
> either to a deliberate undertaking to do or cause
> an act or thing to be done in Michigan or conduct

which can be properly regarded as a prime genera-
ting cause of the effects resulting in Michigan,
something more than a passive availment of Mich-
igan opportunities. The defendant will have reason
to foresee being "haled before" a Michigan court.
[*Khalaf v Bankers & Shippers Ins Co,* 404 Mich
134, 153-154; 273 NW2d 811 (1978).]

Several reasons justify exercising jurisdiction
over corporate defendants who purposely avail
themselves of the business opportunities of a par-
ticular state. A state has an important interest in
providing its residents with a convenient forum for
injuries inflicted by nonresident corporations.
*McGee v Int'l Life Ins Co,* 355 US 220, 223; 78 S Ct
199; 2 L Ed 2d 223 (1957). Moreover, it is unfair to
the plaintiff to allow a nonresident corporation to
escape jurisdiction for injuries directly resulting
from its purposeful availment of forum-based busi-
ness opportunities. "[T]he Due Process Clause may
not be readily wielded as a territorial shield to
avoid interstate obligations that have been volun-
tarily assumed." *Rudzewicz* at 474.

Jurisdiction may not be avoided simply because
the corporate defendant has never physically been
present in the forum state.

> [I]t is an inescapable fact of modern commercial
> life that a substantial amount of business is trans-
> acted solely by mail and wire communications
> across state lines, thus obviating the need for
> physical presence in a State in which business is
> conducted. So long as a commercial actor's efforts
> are "purposefully directed" toward residents of
> another State, we have consistently rejected the
> notion that an absence of physical contacts can
> defeat personal jurisdiction there. [*Id.* at 476.]

Once the threshold requirement of minimum
contacts is satisfied, a court must still consider

whether the exercise of personal jurisdiction comports with fair play and substantial justice. In turn, several factors are relevant to this inquiry as well. Factors that may be weighed in appropriate cases include the burden on the defendant, the forum state's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several states in furthering fundamental substantive social policies. *World-Wide Volkswagen* at 292. These factors may sometime serve to establish the reasonableness of jurisdiction on a lesser showing of minimum contacts. *Rudzewicz* at 477. To defeat jurisdiction, a defendant who has purposely directed its activities at forum residents must present a compelling case that the presence of some other considerations render jurisdiction unreasonable. *Id.* at 478.

In the case at bar, it is obvious that, because the defendant has never done business in Michigan as Rapid American, due process may be satisfied only if the contacts of old Carey can be imputed to it.[4]

B

The corporate law concept of successor liability provides that a corporation that merely purchases the assets of another corporation is not generally responsible for the liabilities of the selling corporation.[5] This concept has been accepted in Michigan for almost one hundred years. *Chase v Michigan*

---

[4] It is for this reason that the scope of this decision concerns whether Rapid American is subject to jurisdiction solely for the acts of old Carey. We make no comment concerning whether the acts of an independent subsidiary may be imputed to a corporate parent.

[5] This, of course, is not what we have in the case at bar. Each of the critical transactions in this case are *mergers.*

*Telephone Co,* 121 Mich 631, 634; 80 NW 717 (1899). As with most general rules of law, there are exceptions. The primary exception for our purposes covers a purchaser's voluntary assumption of liability. In *Chase* we held:

> The law is well settled in regard to liability of the consolidated or purchasing corporation for the debts and liabilities of the consolidating or selling corporation. *Such obligations are assumed . . . when by agreement, express or implied, a purchasing corporation promises to pay the debts of the selling corporation . . . . [Id.* at 634. Emphasis added.]

Therefore, the general rule of nonliability is rendered inapplicable by an express contractual agreement transferring the liability of a predecessor to a successor. Truly, this exception swallows the rule at least as far as corporate mergers are concerned. When two or more corporations merge, the surviving corporation generally succeeds to all the liabilities of the constituent corporations. MCL 450.1724(1)(d); MSA 21.200(724)(1)(d); 15 Fletcher, *supra,* Cyclopedia of Private Corporations, § 7082, p 124.

As the law of personal jurisdiction has evolved in the dynamic environment of complex corporate mergers and interstate commercial transactions, a jurisdictional corollary to the rule concerning the express assumption of a predecessor's liability has emerged: The contacts of a constituent corporation may be attributed to the surviving corporation following a merger for purposes of determining the surviving corporation's amenability to personal jurisdiction for the liabilities incurred by the constituent corporations. 15 Fletcher, § 7082, p 125, and *Goffe v Blake,* 605 F Supp 1151, 1154 (D Del, 1985). This is especially true when the surviving

corporation continues the business of the absorbed constituent. 18 Fletcher, *supra,* § 8640.10, pp 88-89.

An early example of this synthesis between corporate and constitutional law is found in *Wiles, supra.* In that case plaintiff was injured by a gantry made by B. E. Wallace Products Company, a sole proprietorship. In the time between the manufacture of the gantry and the injury, the sole proprietorship was succeeded by the B. E. Wallace Products Corporation. The plaintiff alleged that personal jurisdiction existed over the successor corporation because of the acts of its predecessor. That Court framed the issue as whether denial of a motion for summary disposition was appropriate when the jurisdictional facts had not yet been proven at trial. This in turn required a consideration of whether the plaintiff's theory was correct regarding the imputation of the contacts of a predecessor to a successor.

> Plaintiff's contention that this finding of jurisdiction may be applied against the corporation as a successor in interest, or as an *alter ego* of the proprietorship, is not wholly outside of the law. For instance, in Michigan, the debts and contracts of a partnership become the debts and contracts of the corporation succeeding the partnership, *if* they are expressly assumed by it. . . .
>
> In this case, it is not clear whether it would be proper to look behind the corporate identity of the defendant. This appeal comes to us before sufficient facts have been adduced to determine jurisdiction. Indeed, the motions to dismiss for lack of jurisdiction were filed and argued before plaintiff had completed discovery and before the trial judge had made any final ruling on the issue. [*Wiles* at 304-305.]

Given the procedural posture of that case, the Court concluded that summary disposition was

inappropriate because the plaintiff had alleged facts, which, if proven, could support jurisdiction.

Thus, *Wiles* stands for the proposition that the acts of a predecessor may be imputed to the successor for jurisdictional purposes under the proper circumstances.[6] Apparently, this includes those circumstances in which the successor expressly assume the predecessor's liabilities.

The business organizations involved in *Wiles* were directly related. This is to say that the successor corporation carried on the business of the proprietorship and was, therefore, the present corporate embodiment of the predecessor. The twist in the case at bar is that Glen Alden itself did not carry on the business of old Carey. Rather, it voluntarily assumed all the assets and liabilities of old Carey and then immediately transferred them to new Carey, a wholly owned subsidiary. Thus, the question is whether the fact that Glen Alden did not carry on the business of old Carey negates its express assumption of old Carey's liabilities.

The Missouri Supreme Court concluded that it does not. *Bennett v Rapid American Corp,* 816 SW2d 677 (Mo, 1991). *Bennett* established that a corporation may be subject to personal jurisdiction if its predecessor had sufficient contacts with the state to allow the exercise of personal jurisdiction over it. It did not dispositively resolve the issue of personal jurisdiction over Rapid American because

---

[6] In this regard, *Wiles* is in no way unique. Numerous cases hold that a corporation may be subject to personal jurisdiction in a foreign forum if the contacts of its predecessors are constitutionally sufficient. See *Bowman Livestock* at 1132; *City of Richmond v Madison Management Group,* 918 F2d 438, 454 (CA 4, 1990); *Duris v Erato Shipping, Inc,* 684 F2d 352, 356 (CA 6, 1982); *Cole v Caterpillar Machinery Corp,* 562 F Supp 179, 180-181 (MD La, 1983); *Fehl v SWC Corp,* 433 F Supp 939, 945 (D Del, 1977); *Bennett v Rapid American Corp,* 816 SW2d 677, 678 (Mo, 1991); *Simmers v American Cynamid Corp,* 394 Pa Super 464, 480-490; 576 A2d 376 (1990).

it concluded that the plaintiffs in that case had failed to allege that they were injured by the acts of old Carey. *Id.* at 678. On remand, and once given the opportunity to amend their pleadings, if such claims were established then that court strongly implied that personal jurisdiction would exist over the defendant in Missouri.[7]

Another case imposing personal jurisdiction on a corporate successor because of its assumption of all the liabilities of a predecessor is *Simmers v American Cynamid Corp,* 394 Pa Super 464; 576 A2d 376 (1990), cert den sub nom *Chromally Pharmaceutical v Boyer,* 502 US 813 (1991). While the corporate histories involved in *Simmers* are even more tortured than that of Rapid American, we need not develop them in full. Suffice it to say that beginning in the 1940's Heyden Chemical Corporation distributed an allegedly dangerous drug (Thorotrast) in Pennsylvania. In 1953, Heyden sold its Thorotrast business to American Cynamid. Heyden continued in business but no longer made or sold Thorotrast. American Cynamid through a series of mergers and consolidations eventually became known as Chromally Pharmaceutical Incorporated (CPI). Meanwhile, Tenneco, Incorporated, acquired all the assets and liabilities of Heyden in 1963 by

---

[7] Some courts have gone so far as to actually hold Rapid American liable for the acts of old Carey. One such case is *Tretter v .Rapid American Corp,* 514 F Supp 1344 (ED Mo, 1981). That court held that when a transfer of corporate assets is effected through a merger or consolidation, the transferee assumes its predecessor's liabilities, including its products liability claims.

This Court therefore believes that Rapid American, as the successor to Philip Carey Manufacturing Corporation, may be held liable for the liabilities of its predecessor. The transfer of this liability to New Carey, and ultimately Celotex, does not bar this suit. Of course, as stated earlier, Celotex must indemnify Rapid American for any liability incurred in this suit. [*Id.* at 1347.]

means of a wholly owned subsidiary that became known as Tenneco Resins Incorporated (TRI).

In finding both TRI and CPI subject to personal jurisdiction in Pennsylvania, that court held:

> Since sufficient "minimum contacts" exist between Heyden and Pennsylvania and those contacts relate directly to the causes of action before us, jurisdiction over TRI was properly exercised by the court below. Likewise, CPI, as successor to . . . Heyden, is subject to the personal jurisdiction of Pennsylvania courts, since sufficient "minimum contacts" exist between the subject matter of the litigation, Heyden and the Commonwealth of Pennsylvania.
>
> *      *      *
>
> When a successor corporation assumes the liabilities of its corporate predecessors, the successor in effect consents to be held liable in the same locations where its predecessor would have been exposed, i.e., consents to the same jurisdictional qualities of its predecessor. [*Simmers* at 489-490.][8]

*Simmers* is useful for our purposes because of its similarities to the case at bar. The most important of which is that TRI purchased a company that had long since divested itself of the offending business and yet was held to the same jurisdictional qualities of its predecessor because of its express assumption of all liabilities of that predecessor. Another important similarity is that the real corporate embodiment of the Thorotrast business was CPI, much like Celotex is the real corporate embodiment of the asbestos business of old Carey, and yet TRI was still susceptible to imputation of the

---

[8] Tenneco was also held liable for the actions of Heyden Chemical Corporation in *Gee v Tenneco,* 615 F2d 857, 862 (CA 9, 1980).

contacts created by the sale of Thorotrast in Pennsylvania by its corporate ancestor.[9]

*Bennett* and *Simmers* demonstrate the current national trend equating personal jurisdiction with liability.[10] Professor Casad summarizes this trend as follows:

> The basic test seems to gear the jurisdiction question to whether, as a substantive matter, the successor corporation may be liable for the obligations of the predecessor. The mere fact that a corporation acquires all the assets of another does not necessarily mean it will be liable for the obligations of its predecessor. *If it is liable for the predecessor's obligations, however, it will be subject to long-arm jurisdiction in a suit to enforce the obligation if the predecessor would have been subject to such jurisdiction.* In the absence of an assumption of liability, the contacts of the predecessor corporation generally will not be imputed to the successor. [1 Jurisdiction in Civil Actions (2d ed), § 4.03(5)(d), pp 4-140 to 4-141. Emphasis added.]

The primary rationale supporting this trend is that corporations should be prevented from using organizational changes to avoid jurisdiction in states where they have previously done business.

C

The final component of our analysis is the statu-

---

[9] *Simmers* may also be distinguished from the case at bar because, while not carrying on the Thorotrast business, TRI was the direct descendant of Heyden Chemical. In contrast, jurisdiction over Rapid American is predicated on liabilities assumed through various mergers, not because it is the present embodiment of a corporate ancestor.

[10] See also *Madison Management Group,* n 6 *supra* at 454:

> The great weight of persuasive authority permits imputation of a predecessor's actions upon its successor whenever forum law would hold the successor liable for its predecessor's actions.

tory basis for a Michigan court's exercise of limited personal jurisdiction. Therefore, a brief examination of our long-arm statute governing limited personal jurisdiction is in order. It provides:

> The existence of any of the following relationships between a corporation or its agent and the state shall constitute a sufficient basis of jurisdiction to enable the courts of record of this state to exercise limited personal jurisdiction over such corporation and to enable such courts to render personal judgments against such corporation arising out of the act or acts which create any of the following relationships:
> (1) The transaction of any business within the state.
> (2) The doing or causing any act to be done, or consequences to occur, in the state resulting in an action for tort.
> (3) The ownership, use, or possession of any real or tangible personal property situated within the state.
> (4) Contracting to insure any person, property, or risk located within this state at the time of contracting.
> (5) Entering into a contract for services to be performed or for materials to be furnished in the state by the defendant. [MCL 600.715; MSA 27A.715.]

Old Carey is alleged to have transacted business in this state and to have caused acts to be done in this state that resulted in an action for tort. Therefore, once it is determined that old Carey's contacts may be imputed to Rapid American, it is beyond question that it is subject to our long-arm statute because the cause of action, sounding in tort, is directly related to old Carey's contacts with Michigan.

IV

A

As identified in *Modzy,* our analysis in this case has three prongs: (1) the defendant must be found to have purposely availed itself of the privilege of conducting activities in Michigan, (2) the cause of action must arise from those activities, and (3) the exercise of jurisdiction must be reasonable. Taking them in order, we now consider whether the first prong has been satisfied.

The first prong may only be satisfied if we impute old Carey's contacts to the defendant because the defendant has never done business in Michigan as Rapid American. Rapid American does not dispute that a successor corporation may be held liable for the expressly assumed obligations of its predecessor, and for purposes of this appeal, does not dispute that it is a successor corporation to old Carey.[11] However, Rapid American contends that the amenability of a successor corporation to suit in a particular jurisdiction is distinct from the question of liability. In all cases, defendant argues, the question of jurisdiction must be examined in light of the limitations imposed by the Fourteenth Amendment on a state's exercise of personal jurisdiction.

We agree that liability is not the equivalent of jurisdiction. Even where a corporation is theoretically liable for the acts of a predecessor, the exercise of personal jurisdiction over that defendant must comport with due process. Notwithstanding

[11] It does not concede, however, that it is liable. Given the procedural posture of the case, we resolve all factual disputes, such as theoretical liability, in favor of the plaintiff. We make no determinations whether Rapid American's express contractual assumption of liabilities included old Carey's products liability claims, although we assume as much for the purposes of deciding this motion for summary disposition.

this, the similarity of issues underlying jurisdiction and liability inescapably leads to the conclusion that theories of liability are useful in determining whether the jurisdictional contacts of a predecessor may be imputed to a successor.

> Certain principles of the substantive law with respect to the assumption by successor corporations of products liability are relevant to this jurisdictional question . . . . Common to the scope of both jurisdiction and liability is the fairness of making a corporation which enjoys the benefit of business within the state answerable in that jurisdiction for wrongdoing associated with that business. [*Fehl v SWC Corp,* 433 F Supp 939, 945 (D Del, 1977).]

In the final analysis, each case presents only one set of facts and those facts must be used to establish both jurisdiction and liability if plaintiff is to be successful.

We hold that the actions of a constituent corporation may be attributed to a surviving corporation following a merger for purposes of determining the surviving corporation's amenability to personal jurisdiction for liabilities allegedly incurred by the constituent corporation.[12] While we are cognizant that this rule is typically applied to corporations that are the present corporate embodiment of the predecessor, we find the rule equally applicable when a corporation expressly assumes the liabilities of its predecessors.

The parties to these mergers crafted their agreements as they saw fit. They may not now escape those agreements even if, in hindsight, it would have been more prudent to structure them differ-

---

[12] The mere attribution of those contacts is not, in itself, sufficient to justify the exercise of personal jurisdiction. It must still be determined that it is both fair and reasonable to subject the defendant to jurisdiction.

ently. The defendant expressly assumed the liabili-
ties of Glen Alden, which in turn had assumed all
the liabilities of old Carey. The ramifications of
this seem clear:

> In order to determine whether one company is
> liable on the contracts, debts or other liabilities of
> another company or companies, or is subject to the
> burdens imposed upon them, where there has been
> a combination of corporations . . . *a necessary
> inquiry is whether the one corporation has ex-
> pressly agreed to assume the debts and liabilities
> of the other company or companies, since, of
> course, if it has done so, then it is liable.* [15
> Fletcher, *supra,* § 7102, p 179. Emphasis added.]

This express assumption of liability is a deliber-
ate undertaking on behalf of Rapid American that
amounts to a purposeful availment of Michigan
opportunities. When Glen Alden purchased old
Carey, it acquired old Carey's assets, parts of
which were derived from old Carey's substantial
business contacts in this state. Glen Alden there-
fore derived benefits from old Carey's Michigan
contacts. In turn, Rapid American benefited from
those same contacts through its merger with Glen
Alden. Rapid American surely must have known
that a portion of old Carey's assets were attribut-
able to old Carey's Michigan business. Rapid
American, as a successor to old Carey, reaped the
benefits of old Carey's Michigan business and cor-
respondingly should be held to the same jurisdic-
tional qualities of its predecessor.

Moreover, once Glen Alden had voluntarily as-
sumed all assets and liabilities of old Carey, it
could have, at least in theory, availed itself of
Michigan law in enforcing those rights, at least
insofar as its claims arose out of old Carey's deal-
ings in Michigan. It seems only fair that once this

state's courts were opened to Glen Alden by virtue of old Carey's business in this state that they remain open for the victims of old Carey's alleged negligent acts. See *Cole v Caterpillar Machinery Corp*, 562 F Supp 179, 180-181 (MD La, 1983).

Thus, the imputation of old Carey's contacts to Rapid American satisfies the first prong of our test. We find that Rapid American purposely availed itself of the privilege conducting activities in Michigan through its assumption of old Carey's assets and liabilities. It was therefore predictable, given the way Rapid American had structured its affairs, that it could be brought into court here.

The second prong is easily disposed of because the cause of action in this case directly relates to old Carey's alleged distribution of asbestos-containing products in Michigan. This leaves the third prong: After the threshold requirements of minimum contacts and purposeful availment have been satisfied, we must still consider whether the exercise of personal jurisdiction over the defendant is reasonable. In undertaking this analysis, the focus is on the defendant, the forum, and the litigation.

Much of what we said when examining the first prong of our test is also relevant here. Rapid American should have reasonably anticipated being brought into this state's courts because of its voluntary assumption of all assets and liabilities of old Carey vis-à-vis Glen Alden. Having voluntarily assumed the assets and liabilities of its predecessors, Rapid American may not use due process as a shield to avoid its interstate obligations. *Rudzewicz* at 474.

The defendant challenges the reasonableness of exercising jurisdiction because it argues that its contacts with Michigan are random, fortuitous, attenuated, and based on the unilateral acts of unrelated third parties. We disagree. There is

nothing random in the merger agreements between old Carey and Glen Alden and between Glen Alden and Rapid American. In fact, a review of those agreements shows them to be very deliberative indeed.

While Rapid American's assumption of old Carey's liability may be fortuitous from the plaintiff's perspective, it is the perspective of the defendant that is important. When viewed from the defendant's perspective, there is nothing fortuitous about Rapid American's assumption of liability. Rapid American is a sophisticated corporation with substantial interstate holdings. It must surely understand the ramifications inherent in assuming another corporation's liabilities and presumably accounted for this when negotiating the various merger agreements.

We concede that the time span involved here lends credence to defendant's attenuation argument; however, it is not so great as to defeat jurisdiction in this case.

We reject, however, the suggestion that the defendant is being brought into our courts on the basis of the unilateral acts of unrelated third parties. Rapid American is being brought into our courts because of its express assumption of the assets and liabilities of its predecessors and not solely because its predecessor operated in Michigan. A review of the cases in which jurisdiction was improperly based on the unilateral acts of unrelated third parties shows that the principle is inapplicable to the case at bar.

In *World-Wide Volkswagen,* the Court held that jurisdiction may not be predicated solely on the acts of a consumer who purchases a car from a retailer and drives it to a distant state. Nor may jurisdiction be established over a divorced husband when the only connection of the husband with the

forum is his former spouse's decision to live there. *Kulko, supra.* Similarly, jurisdiction may not be established over a trustee whose only connection with the forum is that the settlor of the trust decided to exercise her power of appointment there. *Hanson, supra.*

Jurisdiction was improper in all these cases because it was being predicated on the acts of someone other than the defendant. The defendant in each case therefore had no reason to anticipate being brought into any of those courts and, correspondingly, had no opportunity to alleviate the risk of litigating there. *Rudzewicz* at 476, n 17.

For reasons previously developed, Rapid American should have realized that it might be called to account for the liabilities it voluntarily assumed in jurisdictions in which its predecessors incurred those liabilities. Inherent in the idea of a voluntary assumption of a risk is the opportunity to alleviate the risk by not assuming it. In this case, the defendant is being subjected to this forum for its own voluntary assumption of its predecessors' liabilities and not because of the unilateral acts of a third party.

Furthermore, it appears that Glen Alden was a wholly owned subsidiary of Rapid American when it merged with old Carey. We recognize that a subsidiary corporation is a distinct legal entity from the parent corporation and no facts have yet been set forth to justify piercing Rapid's corporate veil or that Glen Alden was the alter ego of Rapid American. Nevertheless, to call Glen Alden and Rapid American unrelated third parties, whatever else they technically were, is to apply corporate law theories more rigidly than may be appropriate in what is, basically, a products liability case. See

*Turner v Bituminous Casualty Co,* 397 Mich 406, 425-426; 244 NW2d 873 (1976).[13]

Thus, in addition to Rapid American's assumption of liability, it was the corporate parent of Glen Alden when Glen Alden purchased old Carey. Furthermore, the sale of old Carey by Glen Alden occurred only seven months before Glen Alden merged into its parent, Rapid American. All these factors, not just the express assumption of liabilities, make our exercise of jurisdiction both fair and reasonable.

Also informing our decision regarding the reasonableness of exercising jurisdiction over Rapid American is a consideration of the following factors: the burden on the defendant, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, Michigan's interest in adjudicating the dispute, and the shared interest of the several states in furthering fundamental substantive social policies.

Almost forty years ago, the following observations were made regarding businesses involved in interstate commerce:

> Today many commercial transactions touch two or more States and may involve parties separated by the full continent. . . . At the same time modern transportation and communication have made it much less burdensome for a party sued to defend himself in a State where he engages in economic activity. [*McGee* at 222-223.]

If that statement was true in 1957, it is even more

---

[13] This is not to say that corporate law is irrelevant for purposes of tort law. It is highly relevant especially as far as liability is concerned. However, the policy goals sought to be furthered by a products liability case, just as those furthered by a shareholder's derivative suit, cannot help but color the analysis.

so today in this era of modems, facsimile machines, and digital communications. While we do not discount the inconvenience that the defendant may suffer in this case, we do not believe that the burden rises to a constitutional level. We believe that the burden of forcing Rapid American, a corporation whose holdings appear to be national in scope, to litigate in this forum is slight.

The next consideration is the plaintiff's interest in obtaining convenient and effective relief. The defendant conceded during oral argument that it is subject to personal jurisdiction in New York, where its corporate offices are located, and Delaware, where it is incorporated. Certainly, the courts in either of those states can provide plaintiff with effective relief if his allegations can be proven. It is beyond question, however, that the most convenient forum for this Michigan plaintiff is Michigan. Moreover, because the alleged acts of negligence occurred in Michigan, it is probable that most of the witnesses and evidence will also be found in Michigan.

For these same reasons, the interstate judicial system's interest in obtaining the most efficient resolution of this controversy is best served by trying this case in Michigan.

Michigan's interest in adjudicating this dispute is twofold. First, our state has an overriding interest in making sure that a corporation that has voluntarily assumed the liabilities of its predecessors cannot avoid the jurisdiction of the very forum where those alleged liabilities accrued. This is evidenced by the fact that the Legislature requires that every successor corporation, resulting from a merger under the laws of this state, assume the liabilities of its predecessors. MCL 450.1724(1)(d);

MSA 21.200(724)(1)(d). Second, as a matter of public policy, this Court has held that the costs of defective products are best borne by the manufacturers who put those products on the market as opposed to the consumers who buy them. *Turner* at 425.

Closely connected with Michigan's interest in the litigation is the shared interest of the states in furthering fundamental social policies. We believe that all states share the same interest as Michigan in preventing corporations from escaping jurisdiction by mergers, and in making businesses bear the burden of placing defective products on the market. These last two considerations, therefore, favor neither party because these interests could be vindicated in Michigan, Delaware, or New York.

We finally note that when a defendant has purposely directed its activities at forum residents, it must present a compelling case that the presence of some other considerations renders jurisdiction unreasonable. The defendant has presented no such considerations. In light of this and in conjunction with the defendant's imputed contacts, its purposeful availment of Michigan opportunities, and our consideration of other factors, we believe that it is reasonable to assert jurisdiction over the defendant. However, we adopt the caveat provided by the Court of Appeals:

> We do not hold that a corporation's mere assumption of the liabilities of another corporation gives rise to jurisdiction under all circumstances. Each case must be examined individually. Assumption of liabilities and jurisdiction are, and will remain, separate issues. [200 Mich App 155.]

B

Assertion of limited personal jurisdiction is pro-

vided by MCL 600.715; MSA 27A.715. It is alleged that old Carey caused acts to be done in this state that resulted in an action for tort. MCL 600.715(2); MSA 27A.715(2) provides for limited jurisdiction over a defendant who causes acts to be done in this state that result in an action for tort. As we have held, old Carey's contacts may be imputed to Rapid American. Accordingly, Rapid American is subject to our long-arm statute because the cause of action, sounding in tort, is directly related to old Carey's contacts with Michigan.

v

In conclusion, we hold that the jurisdictional contacts of a predecessor can be imputed to a successor when the successor expressly assumes all liabilities of the predecessor and when exercise of personal jurisdiction over that defendant is reasonable. We conclude that the plaintiff has alleged sufficient jurisdictional facts, which, if proven, will establish limited jurisdiction over this defendant for the actions of old Carey pursuant to MCL 600.715; MSA 27A.715.

The decision of the Court of Appeals is affirmed. We remand this case for proceedings consistent with this opinion.

BRICKLEY, C.J., and LEVIN, BOYLE, RILEY, and MALLETT, JJ., concurred with CAVANAGH, J.

WEAVER, J., took no part in the decision of this case.