(text box: 1) NO. 5-03-0737

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

________________________________________________________________________

BONNIE FLANDERS, Individually )  Appeal from the

and as the Special Administrator of the Estate )  Circuit Court of

of Thomas Flanders, Deceased, )  Lawrence County.

)

     Plaintiff-Appellee, )

)

v. )  No. 01-L-12

)

CALIFORNIA COASTAL COMMUNITIES, )

INC., f/k/a KOLL REAL ESTATE GROUP, )

INC., )

)

     Defendant-Appellant, )

)

and )

)

BECHTEL CORPORATION, CHICAGO )

BRIDGE & IRON COMPANY, JOHN )

CRANE, INC., RAPID AMERICAN )

CORPORATION, WHEELABRATOR )

TECHNOLOGIES, INC., RESCO )

HOLDINGS, INC., UNION TANK CAR )

COMPANY, GRAVER WATER SYSTEMS, )

GRAVER TECHNOLOGIES, INC., )

MARMOM INDUSTRIAL CORPORATION, )

INC., and ABB LUMMUS GLOBAL, INC., )  Honorable

)  Robert M. Hopkins,

     Defendants. )  Judge, presiding.

________________________________________________________________________

JUSTICE KUEHN delivered the opinion of the court:

This is a case where a man's estate is seeking damages related to his death.  Thomas Flanders died of mesothelioma, most likely due to asbestos exposure.  It is alleged that a significant exposure to asbestos occurred when he worked at a Texaco refinery in Lawrenceville, Illinois, where a catalytic cracker unit was allegedly manufactured by M.W. Kellogg Company (M.W. Kellogg) in 1950.  Asbestos was used as insulation in this facility.  The simple litigation tactic would be to sue M.W. Kellogg, the corporate entity allegedly responsible for the asbestos-related cancer.  However, that is not possible due to a series of corporate transactions detailed below.  Finding the holder of M.W. Kellogg's liabilities, and thus the correct entity to be sued in this matter, is complicated by the failure on the part of the corporations involved to acknowledge ownership.  Given the passage of time and the complexities of the corporate transactions, determining where M.W. Kellogg's liabilities rest is no small task.  

The responsibility for this asbestos-related cancer, due to an exposure that someone knew to be dangerous long ago, is still a mystery, although significantly narrowed to two current corporate entities.  The two entities each point the finger of responsibility at the other.  California Coastal Communities, Inc. (California Coastal), is one of these two corporate entities and argued that the courts of Illinois lack personal jurisdiction over it and that the suit should be dismissed.  The trial court did not make the ultimate determination of whether California Coastal was the successor of M.W. Kellogg's liabilities but instead found that, applying Michigan law, in order for the court to find jurisdiction under the long-arm statute, it was only necessary to determine that California Coastal 
might be
 the correct entity.   We examine the complete history of the corporate transactions that have handed off and effectively obscured where the liability in this case truly lies.  Here is a look at the path that the liability for Thomas Flanders's asbestos-related death from cancer has traveled, before arriving hidden in one of two corporations summoned into Judge Robert Hopkins's courtroom.

M.W. Kellogg was formed in 1905.  In 1943, it became a wholly owned subsidiary of Pullman, Inc., but still operated as M.W. Kellogg.  In 1963, M.W. Kellogg and Pullman, Inc., merged, with Pullman, Inc., as the "surviving" corporation.  Thereafter, Pullman, Inc., created the M.W. Kellogg division of Pullman, Inc.  M.W. Kellogg remained a division of Pullman, Inc., until 1980, when Wheelabrator-Frye, Inc. (Wheelabrator-Frye), acquired Pullman, Inc., and all of its autonomous divisions.

Wheelabrator-Frye created a corporation called Wheelabrator Chicago, Inc.  Pullman, Inc., and Wheelabrator Chicago, Inc., merged, under the name of Pullman, Inc.  Pullman, Inc., continued to operate its divisions, including M.W. Kellogg.  At that time, Pullman, Inc., and its division M.W. Kellogg were owned by Wheelabrator-Frye.  Then, Pullman, Inc., changed its name to M.W. Kellogg Company.  M.W. Kellogg Company, a Delaware corporation, operated its various divisions, including the M.W. Kellogg division.  This changed when, in 1981, Wheelabrator-Frye split Pullman, Inc., and M.W. Kellogg Company into separate corporations.  

Wheelabrator-Frye merged with The Signal Companies in 1983.  Two years later, The  Signal Companies merged with Allied Corp. and became a wholly owned subsidiary of Allied-Signal, Inc.  In 1986, Allied-Signal, Inc., spun off 39 of its businesses into a new holding corporation named The Henley Group, Inc. (Henley I).  Upon Henley I's incorporation, all the stock of several Allied-Signal, Inc., businesses was contributed to it–including the stock of M.W. Kellogg Company.

In January 1988, Henley I sold M.W. Kellogg Company's engineering business, name, and assets (but not its stock) to Dresser Industries (Dresser).  At the time of this acquisition, Dresser formed a corporation called MWK Acquisitions Corp.  Immediately upon the completion of the transaction, Dresser changed the name of MWK Acquisitions Corp. to the M.W. Kellogg Company.  This company then existed until M.W. Kellogg Company merged into Brown & Root, effective January 1, 1999.  As a part of this purchase, Dresser agreed to acquire the contractual liabilities associated with any "open" contract.  The Lawrenceville Texaco contract was not listed as an "open" contract.  The contract of sale purports to exclude the assumption of any liabilities of M.W. Kellogg Company or of its subsidiaries or affiliates if the liability at issue had been incurred prior to the contract's closing date.

Also in January 1988, Henley I completed a reverse spinoff in which it placed certain assets and businesses into a subsidiary, including all the stock of those certain businesses, which was given as a dividend to its shareholders.  

In December 1988, Henley I contributed various businesses to create a new corporate entity, Henley Newco, Inc. (Henley Newco).  The list of businesses contributed to Henley Newco did not include M.W. Kellogg Company.  Thereafter, Henley I changed its name to The Wheelabrator Group, Inc., and Henley Newco became known as The Henley Group, Inc. (Henley II).  Included in the facts in California Coastal's brief on appeal is a statement that the limited indemnification obligation (Henley I to indemnify Dresser through 1991 for certain of M.W. Kellogg Company's liabilities to third parties) was assigned to Henley II.  We are not disputing this as a fact, but we simply cannot find verification in the record on appeal. 

Along with the Henley I spinoff came a name change, although we are not aware of the date of the name change, other than that it appears that it occurred sometime after December 1988, the date of the agreement.  Henley I was thereafter known as The Wheelabrator Group, Inc., and the spinoff subsidiary corporation was named The Henley Group, Inc. (Henley II).  All of M.W. Kellogg Company's stock, which was at that time a corporate shell with no assets or operations, apparently went to The Wheelabrator Group, Inc. 

In June 1988, The Wheelabrator Group, Inc., formed Resco Holdings, Inc., as a wholly owned subsidiary, although we are unclear whether it did so as The Wheelabrator Group, Inc., or as Henley I. 

There is some evidence that the shell corporation holding M.W. Kellogg Company's stock was merged into Resco Holdings, Inc.  A letter from the general counsel of Henley I to the general counsel of M.W. Kellogg Company (the owner of the engineering business, assets, and name) states as follows:

"Following the 1988 sale of the MWK assets to Dresser, the name of M.W. Kellogg Company was changed to Henley/MWK Holdings, Inc.[,] as required by the Purchase Agreement.  In April[] 1988, its name was again changed to Kell Holdings Corp.  In July 1989, Kell Holdings Corp. was merged into Resco Holdings, Inc., a subsidiary of the Wheelabrator Group, Inc."

Henley II completed a second reverse spinoff in 1989, at which time Henley II changed its name to Henley Properties, Inc.  At some point in time, Henley Properties, Inc., became known as Koll Real Estate Group, Inc.  In 1998, Koll Real Estate Group, Inc., changed its name to California Coastal Communities, Inc. 

In the context of this case–with a need to ascertain the owner of the liabilities of the original M.W. Kellogg–California Coastal and Resco Holdings, Inc., are pitted against each other.  Each denies that it owns the liabilities of M.W. Kellogg.  

The trial court concluded that the plaintiff had made a 
prima facie
 case of jurisdiction against California Coastal, and the court denied California Coastal's motion to dismiss.  After stating that no Illinois case specifically dealing with corporate successor liability and the long-arm statute had been cited or could be located, the court based its decision upon a Michigan Supreme Court case that it cited as "persuasive."  The court did not make "a final detailed determination as to successorship liability of [California Coastal] for the alleged tortious acts of M.W. Kellogg."  However, the court concluded that there was sufficient evidence potentially pointing in California Coastal's direction in order to support a finding of jurisdiction.  Elsewhere in the order, in ruling upon Resco Holdings, Inc.'s motion for a summary judgment, the trial court noted, "Although a strong case is made for [California Coastal] being the corporate successor to the M.W. Kellogg liability in question, an equally strong case is made for successor liability of Resco for the M.W. Kellogg liability."

What is clear is that California Coastal was incorporated in Delaware in September 1988.  It acknowledges that originally, at incorporation, it was named Henley Newco, Inc., and that it later changed its name on numerous occasions.  At times the entity has been known as The Henley Group, Inc., and Koll Real Estate Group, Inc.

When a jurisdictional case is decided without the court hearing testimony, we review the trial court's decision without deference.  
Adams v. Harrah's Maryland Heights Corp.
, 338 Ill. App. 3d 745, 747, 789 N.E.2d 436, 439 (2003).

In a case where the plaintiff alleges that the court has jurisdiction over a nonresident, the plaintiff carries the burden of establishing a 
prima facie
 basis for the exercise of that jurisdiction.  
International Business Machines Corp. v. Martin Property & Casualty Insurance Agency, Inc.
, 281 Ill. App. 3d 854, 857-58, 666 N.E.2d 866, 868 (1996).  Once the plaintiff has met this burden, the burden then swings over to the defendant to show why the assertion of jurisdiction would be unreasonable.  
Adams
, 338 Ill. App. 3d at 747, 789 N.E.2d at 439 (citing 
Worldtronics International, Inc. v. Ever Splendor Enterprise Co.
, 969 F. Supp. 1136, 1142 (N.D. Ill. 1997)).

The Illinois long-arm statute authorizes Illinois courts to exercise personal jurisdiction over nonresident defendants.  735 ILCS 5/2-209(a), (b), (c) (West 2000).  Various events would constitute an act submitting to jurisdiction, including "[t]he transaction of any business within this [s]tate," "[t]he commission of a tortious act within this [s]tate," "[t]he ownership, use, or possession of any real estate situated in this [s]tate," and "[t]he making or performance of any contract or promise substantially connected with this [s]tate."  735 ILCS 5/2-209(a)(1), (a)(2), (a)(3), (a)(7) (West 2000).  Furthermore, a corporation "doing business within this [s]tate" would be subjected to our courts' jurisdiction.  735 ILCS 5/2-209(b)(4) (West 2000).  Additionally, an Illinois court may exercise jurisdiction "on any other basis now or hereafter permitted by the Illinois Constitution and the Constitution of the United States."  735 ILCS 5/2-209(c) (West 2000).

Federal due process mandates that the defendant have certain minimum contacts with the forum state so that the maintenance of the suit there does not offend " 'traditional notions of fair play and substantial justice.' "  
International Shoe Co. v. Washington
, 326 U.S. 310, 316, 90 L. Ed. 95, 102, 66 S. Ct. 154, 158 (1945) (quoting 
Milliken v. Meyer
, 311 U.S. 457, 463, 85 L. Ed. 278, 283, 61 S. Ct. 339, 343 (1940)).  These "minimum contacts" must have a basis in " 'some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum [s]tate, thus invoking the benefits and protections of its laws.' "  
Asahi Metal Industry Co. v. Superior Court of California
, 480 U.S. 102, 109, 94 L. Ed. 2d 92, 102, 107 S. Ct. 1026, 1030 (1987) (quoting 
Burger King Corp. v. Rudzewicz
, 471 U.S. 462, 475, 85 L. Ed. 2d 528, 542, 105 S. Ct. 2174, 2183 (1985)).  When we conduct a federal due process analysis, we must consider whether "(1) the nonresident defendant had minimum contacts with the forum state such that there was fair warning that the nonresident defendant may be hailed into a forum court, (2) the action arose out of or related to the defendant's contacts with the forum state, and (3) it is reasonable to require the defendant to litigate in the forum state."  
Adams
, 338 Ill. App. 3d at 748, 789 N.E.2d at 440 (citing 
Burger King Corp.
, 471 U.S. at 471-77, 85 L. Ed. 2d at 540-44, 105 S. Ct. at 2181-84).

The Illinois Supreme Court has explained that the traditional rule is that a successor corporation is not responsible for the liabilities of its predecessor.  
Vernon v. Schuster
, 179 Ill. 2d 338, 344-45, 688 N.E.2d 1172, 1175 (1997).  There are, however, four exceptions to this general rule: "(1) where there is an express or implied agreement of assumption; (2) where the transaction amounts to a consolidation or merger of the purchaser or seller corporation; (3) where the purchaser is merely a continuation of the seller; or (4) where the transaction is for the fraudulent purpose of escaping liability for the seller's obligations."  
Vernon
, 179 Ill. 2d at 345, 688 N.E.2d at 1175-76.  Therefore, continuity of the corporate entity is an established basis for successor liability in Illinois.

In this case, the trial judge was being asked to make a threshold determination of jurisdiction.  In order to make that determination, he would have had to determine that California Coastal committed an act which would subject it to personal jurisdiction.  Taking this reasoning to the next logical step, the trial judge was required to conclude that California Coastal was in fact the successor corporation of M.W. Kellogg.  Judge Hopkins clearly did not make this finding, instead stating that either Resco Holdings, Inc., or California Coastal could be the successor corporation.  

The court's basis for asserting jurisdiction over both potential corporate successors in this case, without a specific finding that one actually is the corporate successor, is the Michigan Supreme Court case of 
Jeffrey v. Rapid American Corp.
, 448 Mich. 178, 529 N.W.2d 644 (1995).  We find that this case is inapposite.  In 
Jeffrey v. Rapid American Corp.
, there was a merger between two companies.  
Jeffrey
, 448 Mich. at 181-82, 529 N.W.2d at 647.  Michigan law expressly provides for successor liability in the case of a merger, and in any event, there was an express agreement between the parties by which the successor corporation assumed the predecessor's liabilities.  
Jeffrey
, 448 Mich. at 198, 529 N.W.2d at 654-55.  The identity of the corporate successor was not unknown and was not denied by the corporate entity seeking to avoid the long-arm jurisdiction of the Michigan courts.  The Michigan Supreme Court was simply establishing the propriety of a finding of jurisdiction over a corporate entity with no connection to the State of Michigan other than its role as a corporate successor to a company with potential asbestos tort liability.

The jurisdiction of the courts is not meant to be a speculative venture.  Admittedly, this is a unique case.  Corporate maneuvers are not always so tangled.  We hope that in most such situations, the successor corporate entity would come forward and acknowledge its place in the relevant corporate history.  This case seemingly presents a factual history about which there is a legitimate dispute regarding the identity of M.W. Kellogg's corporate successor, and not just a situation presenting attorneys representing the various entities with a chance to argue.  But however difficult the facts of this case are, the court cannot act by way of speculation.  In order to establish jurisdiction over California Coastal, the court must conclude that the corporation did something subjecting it to the court's jurisdiction.  Without determining that California Coastal is the corporate successor to M.W. Kellogg, there is no basis in law to force California Coastal to appear and to defend this suit.  The court's conclusion that California Coastal might be the right corporation at issue is a finding of questionable jurisdiction.  

A finding that California Coastal might be the corporate successor, and that therefore an Illinois court might have personal jurisdiction by virtue of that potential fact, translates into a finding that Illinois courts might not have jurisdiction over California Coastal.  We cannot start down this questionable jurisdictional road.

We do not express an opinion regarding whether California Coastal is in fact the successor corporation to M.W. Kellogg, reserving that determination for the trial court upon remand.  For the foregoing reasons, the judgment of the circuit court of Lawrence County is hereby reversed, and the cause is remanded for further proceedings consistent with this opinion.

Reversed; cause remanded.

WELCH and HOPKINS, JJ., concur.

                                      NO. 5-03-0737

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

___________________________________________________________________________________

BONNIE FLANDERS, Individually )  Appeal from the

and as the Special Administrator of the Estate )  Circuit Court of

of Thomas Flanders, Deceased, )  Lawrence County.

)

     Plaintiff-Appellee, )

)

v. )  No. 01-L-12

)

CALIFORNIA COASTAL COMMUNITIES, )

INC., f/k/a KOLL REAL ESTATE GROUP, )

INC., )

)

     Defendant-Appellant, )

)

and )

)

BECHTEL CORPORATION, CHICAGO )

BRIDGE & IRON COMPANY, JOHN )

CRANE, INC., RAPID AMERICAN )

CORPORATION, WHEELABRATOR )

TECHNOLOGIES, INC., RESCO )

HOLDINGS, INC., UNION TANK CAR )

COMPANY, GRAVER WATER SYSTEMS, )

GRAVER TECHNOLOGIES, INC., )

MARMOM INDUSTRIAL CORPORATION, )

INC., and ABB LUMMUS GLOBAL, INC., )  Honorable

)  Robert M. Hopkins,

     Defendants. )  Judge, presiding.

___________________________________________________________________________________

Opinion Filed
: April 13, 2005

___________________________________________________________________________________

Justices
: Honorable Clyde L. Kuehn, J.

Honorable Thomas M. Welch, J., and 

Honorable Terrence J. Hopkins, J.,

Concur

___________________________________________________________________________________

Attorneys
 Patrick J. Lamb, Randi Ellias, Suzanne M. Walton, Butler Rubin Saltarelli &

for
 Boyd, 70 West Madison Street, Suite 1800, Chicago, IL 60602 

Appellant
 

_____________________________________________________________________________________

Attorneys
 Robert G. McCoy, Michael A. Kaczmarek, Cascino Vaughan Law Offices, Ltd., 220

for
 S. Ashland Avenue, Chicago, IL 60607; Allen Large, 715 12th Street, Lawrenceville,

Appellee
 IL 62439

___________________________________________________________________________________

COMMENTS AND ANNOTATIONS
Text Box 1:

TEXT BOXES
NOTICE

Decision filed 04/13/05.  The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.